GREENE, Respondent, vs. WATERS, .Appellant.

*October 11—November 6, 1951.*

For the appellant there was a brief by *Krueger & Fulmer* of Wausau, and oral argument by *Burton E. Fulmer*.
*D. V. W. Beckwith* of Madison, for the respondent.

BROADFOOT, J.   On July 12, 1948, plaintiff was injured in an automobile accident near Wisconsin Rapids.  At the time of the accident she was a guest passenger in an automobile owned by one J. E. Parkin, which was driven by one Norine Parkin.  Following the accident the plaintiff was taken to a hospital in Wisconsin Rapids where she was treated by the defendant for her injuries received in the automobile accident.  Plaintiff brought an action against Norine Parkin and Farmers Mutual Automobile Insurance Company, the insurer of the Parkin car.  On October 18, 1949, a stipulation was entered into in open court that said action be compromised and settled by payment by the insurance company to the plaintiff of the sum of $6,400.  Said stipulation contained the following paragraph:

"It is however distinctly agreed and understood that there be and hereby are excepted from such settlement any claims

or causes of action that the plaintiff may have against any firm, person, or parties other than Norine Parkin, J. E. Parkin, and Farmers Mutual Automobile Insurance Company, or any or either of them, on account or in consequence of the said accident or any injuries or injurious effect to said plaintiff as a result of said accident."

Pursuant to the stipulation the plaintiff was paid the sum of $6,400 upon signing a release and an agreement. The release was in the usual form, except that it contained the following paragraph:

"It is, however, understood (a) that I do not release from liability but expressly hereby reserve unto myself, my heirs, legal representatives, and assigns, any and every claim or cause of action that I now have or may hereafter have against any person, firm, or corporation other than said Norine Parkin, J. E. Parkin, and Farmers Mutual Automobile Insurance Company, or any of them, or their respective heirs, legal representatives, or assigns, on account or in consequence of said accident or any bodily or other injury sustained by me as a result of said accident, or on account or in consequence of any malpractice or improper treatment on the part of any physician or surgeon in or about or with respect to any such bodily injury, and (b) that any recovery by me, or my heirs, legal representatives, or assigns, for, upon, or with respect to any such claim or cause of action so reserved by me shall be distributed in accordance with an agreement in writing made and entered into by and between the undersigned and said Norine Parkin, J. E. Parkin, and Farmers Mutual Automobile Insurance Company, on, and dated, the 18th day of October, 1949."

The agreement provided that if the plaintiff recovered from any other person, firm, or corporation because of injuries sustained by her in the automobile accident, or on account of failure of any physician or surgeon to treat her properly for injuries sustained by her in the automobile accident, plaintiff would retain any amount recovered up to the sum of $4,600 and that any amount recovered above that sum would be

paid to the Farmers Mutual Automobile Insurance Company, until it had received the sum it had paid to plaintiff.

The present action was commenced after said settlement had been completed. The answer denied that the defendant was negligent in his treatment of the plaintiff, and as a further defense alleged that by reason of the stipulation, release, and agreement, the insurance company was subrogated to all of the rights, if any, which the plaintiff may have had, and that by reason thereof there is a defect in the parties plaintiff in this action.

Upon his motion for summary judgment the defendant filed an affidavit setting forth the stipulation, release, and agreement, and in opposition thereto the plaintiff, by affidavit of her attorney, set forth that prior to the commencement of the action the insurance company had assigned all claims and causes of action which it might have against the defendant by way of subrogation or otherwise.

The defendant contends upon this appeal that a complete release to the primary tort-feasor releases the physician alleged to have caused an aggravation of the injuries resulting from the tort by alleged negligent treatment; that the collateral agreement indicates some amount was paid to plaintiff because of the claimed aggravation of damages by the physician; and that the assignment conclusively indicates payment of the claimed aggravation of damages was made on behalf of the first tort-feasor. That would be true in Wisconsin where no reservation is made in the release. *Fisher v. Milwaukee E. R. & L. Co.* 173 Wis. 57, 180 N. W. 269; *Hooyman v. Reeve,* 168 Wis. 420, 170 N. W. 282; *Retelle v. Sullivan,* 191 Wis. 576, 211 N. W. 756.

In case of a complete release the plaintiff would have no claim against the physician. As they are not joint tort-feasors the automobile driver would have no claim against the physician for contribution, but he would have a claim by way of subrogation to the plaintiff's rights for that part of the

damages which are primarily due to the negligence of the physician.

The defendant states that this court has not determined whether it is possible in case of a complete release of the tort-feasor to reserve a cause of action against the physician by appropriate language in the release. He cites authorities from other jurisdictions which show that the rule is different in the states which have had occasion to pass upon it. He then argues that the best-reasoned authorities hold that such reservation is not tenable. However, in this case a complete release was not given. The documents executed in connection with the settlement in the automobile case indicate that the plaintiff retained her claim against the defendant. She did not give a full release. She received the sum of $6,400 and hopes to collect at least $4,600 more from the defendant. It is clear that she considers her full damages, because of the original injury and the claimed aggravation thereof, to be worth the sum of $11,000. The name given to a document in such a case as this is not controlling. A document called a release may in fact be a covenant not to sue; and *vice versa*. The intention of the parties as revealed by the document itself is controlling.

In the case of *Kropidlowski v. Pfister & Vogel Leather Co.* 149 Wis. 421, 422, 135 N. W. 839, the plaintiff made settlement with one of two joint tort-feasors but in the release appeared the following sentence: "It is expressly understood, however, that said sums are received not as an accord and satisfaction for the whole injury suffered, but only as part satisfaction thereof." In that case the court said (p. 427):

"What has been stated as the general rule seems to be not only illogical but arbitrary, as applied to such a document as the one before us. It entirely overrides the manifest intention of the party who executes the release. Contrary to the general rule applicable to the construction of writings, it gives an effect to the instrument which is at variance with the meaning of the words used. All joint tort-feasors are severally liable

for the entire damage inflicted. The respondent here might pursue the appellant and collect his entire damages from it, if he were able to establish a legal liability. Since a settlement was made with one joint tort-feasor, it may well result in a benefit to the appellant instead of an injury, because there has been partial compensation and the sum paid as such compensation cannot be again recovered. There are some cases which recognize the right of contribution between wrong-doers. 1 Cooley, Torts (3d ed.), 254 *et seq*. But if this case should be brought within the principle of the decisions there cited the respondent's cause of action would still remain, and at most the right of contribution could only affect the amount of recovery. We do not think that a construction of the so-called release should be adopted which would operate to defeat the intention of the parties instead of effectuating that intent. Neither do we think that what is at best manifestly intended to be a partial release should be held to be a complete one because the word 'release,' which has a technical meaning in the law, happens to be used. If a release implies full satisfaction, then it is apparent that there has not been full satisfaction, and consequently there has been no release in the technical sense, and that the intention of the parties will be best carried out by treating the agreement as a covenant not to sue."

In the case of *Noll v. Nugent*, 214 Wis. 204, 252 N. W. 574, the plaintiff sustained an injury to her ankle in a fall on a defective walk. The defendant Nugent administered proper medical treatment for the ankle until September 4, 1928. On April 26, 1929, she settled her claim against the property owner and executed a release discharging him from all claims, demands, damages, actions, or causes of action resulting from the accident. In December, 1929, she returned to the defendant for further treatment of her ankle and later started an action against Nugent for alleged injuries by reason of the excessive application of heat to her ankle. In that case the court said (p. 208):

"Obviously, if upon settling with the claimant the first tort-feasor becomes subrogated to the claimant's rights

against the physician, whose malpractice prior to the settlement aggravated the claimant's injuries and enhanced his damages, then that settlement cannot be deemed to have operated as a discharge of the claimant's cause of action against the physician. That cause of action to recover from the physician on account of the malpractice theretofore committed by him continues to exist notwithstanding the release of the first tort-feasor, but by virtue of the first tort-feasor's right to subrogation, that cause of action becomes vested in that first tort-feasor, because the damages for which he was liable include the enhancement thereof by reason of the physician's malpractice prior to the settlement. The claimant may not twice recover compensation for the same injury, but the first tort-feasor, who has settled with the claimant, and therefore stands in the shoes of the claimant, may enforce the claimant's right to compensation from the physician, because the settlement by the first tort-feasor is presumed in law to have included compensation for the injury occasioned by malpractice, which was committed before the release of a prior tort-feasor. *That presumption is conclusive unless, in releasing the prior wrongdoer, there is saved to the injured person his cause of action against the physician by the use of some appropriate provision in the release by which that settlement was effected, or by a covenant not to sue.*" (Emphasis ours.)

The defendant argues that the language used in the *Noll Case* was *obiter dictum* and therefore is not controlling. Be that as it may, it correctly states the Wisconsin rule and gives effect to the apparent intention of the parties.

The defendant contends further that if a large award of damages is made in this action the agreement will result in placing the burden of all of the damages upon him. If a jury should award an unexpectedly large amount of damages, the court can take proper measures to protect defendant. At this stage of the proceedings the defendant is unable to show that his rights have been prejudiced.

The defendant finally contends that the plaintiff may not rely upon an assignment of the subrogation rights of the primary tort-feasor because a' claim based upon such rights

is not embraced within the pleadings. The trial court did not pass upon this question, and it should be submitted for its consideration upon appropriate proceedings.

*By the Court.*—Order affirmed.