HOLTON STATE BANK, Plaintiff and Respondent, v. GREATER MILWAUKEE FOOD MERCHANTS ASSOCIATION, INC., Defendant: MARK IV CONSTRUCTION & ENGINEERING COMPANY, INC., Defendant and Appellant.

*December 2, 1959—January 5, 1960.*

For the appellant there was a brief by *William P. Mc-Govern,* attorney, and *Patrick T. Sheedy* and *Michael J. Barron* of counsel, all of Milwaukee, and oral argument by *Mr. McGovern.*

For the respondent there was a brief and oral argument by *Joseph N. Futowsky,* attorney, and *Ralph M. Hoyt* of counsel, both of Milwaukee.

HALLOWS, J.   The appellant contends the lien waivers should be reformed because of a mutual mistake of fact. This requires us to review the evidence. On November 15, 1956, Holton State Bank loaned Food Merchants the sum of $14,000 and took its promissory note secured by a first mortgage on a store building in Milwaukee. At this time Food Merchants and Mark were negotiating for the remodeling of the building and on November 16th, the day

following the loan, they entered into a written contract whereby Mark undertook to remodel the front of the building. The work was commenced by Mark on January 2, 1957, and continued until March 18, 1957. Following the commencement of the work by Mark, in order to secure further funds Food Merchants borrowed from the Holton State Bank on January 22, 1957, an additional $8,000 and gave its promissory note secured by a second mortgage on the building. This money was to be disbursed by the bank upon authorization of Food Merchants.

The contract between Food Merchants and Mark provided for monthly payments to Mark upon the submission of a statement for the amount then due for labor and material, and payment was to be made upon the delivery by Mark of a waiver of lien for work performed and material furnished up to the date of the statement. The bank at no time saw or had knowledge of this contract calling for such limited waivers of lien. On January 10th, Mark submitted a statement and a waiver to Food Merchants and in due time received from Food Merchants a cashier's check of the Holton State Bank for the amount of the statement. In February, a similar transaction took place. In March, Mark was informed by Food Merchants, upon the presentation of a statement for $7,581.79 there was not that much money in the construction account at the bank, and Mark should submit two statements, one for the amount of money left in the account, and one for the balance due. This Mark did and the statement for the amount remaining in the account and waiver were presented directly to the bank by Mark, and payment was made.

Food Merchants was unable to borrow further money to complete the remodeling and defaulted on the mortgages and in its payment to Mark. Some months later this suit was commenced.

It is claimed by the appellant that the trial court erred in not reforming the waivers in accordance with the provisions of its contract with Food Merchants. We find no evidence of a mutual mistake. The difference between the waivers used and those called for by the contract is reasonably explained. An officer of the bank testified he most likely explained the loan procedure and requirements for waivers of lien to Food Merchants, although he could not recall any specific conversation. The officers of Food Merchants testified they did not ask for waivers from Mark but they had no reason to because waivers were furnished with the statements. Mr. Frank J. Bauer, an officer of Mark, stated he had a conversation with one of the officers of Food Merchants regarding the loan Food Merchants was going to make from the Holton State Bank and was told the amount of the loan was $8,000, and in order to receive payment Mark would have to furnish waivers in full to the bank or to Food Merchants before payment would be made.

It appears that Mark had purchased the form of waiver at a stationery store and had been using it for some five years. This fact supports only an inference that the appellant was negligent or did not know the legal effect of the form of waiver it purchased and used. There is no testimony that Mark believed it was giving waivers limited to work and materials performed and furnished. A legitimate inference can be drawn from the testimony of Mr. Bauer that he knew Mark had to furnish waivers of lien for work and material to be performed and furnished to the bank and such waivers were furnished on that knowledge. The terms of the contract in respect to waivers were changed.

This court has often held that agreements may be reformed between the original parties in a suit in equity where the true intent of the parties is not embodied in the

written agreement because of a mutual mistake. *Kovacs v. Hoag* (1953), 263 Wis. 139, 56 N. W. (2d) 829; *Shearer v. Pringle* (1930), 203 Wis. 164, 233 N. W. 623; *La Rosa v. Hess* (1951), 258 Wis. 557, 46 N. W. (2d) 737. These cases are not applicable because there is no evidence in this record to show the full waivers were given by mutual mistake. See *Breeden v. Breeden* (1959), 6 Wis. (2d) 149, 93 N. W. (2d) 854.

The Holton State Bank was a stranger to the contract and knew nothing about it. The money was paid out upon the waivers presented. True, the assistant vice-president of the Holton State Bank testified he did not discuss with any officer of Mark the kind of waiver the bank was demanding, but there was no occasion for such conversation. The loan was made to Food Merchants. The only contact between the bank and Mark was the March payment at which time Mark presented the waiver to the bank with its statement. A complete and full waiver being presented with approval of Food Merchants, there was no reason for the bank to discuss with Mark any question of waiver of lien.

Proof of a mutual mistake to justify reformation must be clear and convincing that both parties intended to make a different instrument and had agreed upon facts which were different than those set forth in the instrument. *Kadow v. Aluminum Specialty Co.* (1948), 253 Wis. 76, 33 N. W. (2d) 236; *Jentzsch v. Roenfanz* (1924), 185 Wis. 189, 201 N. W. 504.

A court of equity will not reform the waivers against a third party who, without any knowledge of the mistake, has relied on the instrument in parting with valuable consideration. For collection of cases on this proposition of law, see Anno. 44 A. L. R. 78, at page 79, and Anno. 102 A. L. R. 825, at pages 826, 827. Restatement, 2 Contracts, p. 968, sec. 504, states reformation can be had for mutual

mistake "if innocent third persons will not be unfairly affected thereby." The applicable rule is stated in 45 Am. Jur., Reformation of Instruments, p. 624, sec. 68, as follows: "And it is an almost-universal rule not to grant relief by way of reformation to the injury of innocent third persons such as *bona fide* purchasers and lien holders without notice, and others who have acquired intervening or vested rights and who cannot be placed *in statu quo*."

The bank is in the position of an innocent third person relying on the waivers when it paid the appellant who was told complete and full waivers would have to be furnished. To reform the waivers now would be to the bank's prejudice. It cannot be placed in the position in which it was prior to the loan.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.