KRENZ and husband, Respondents, v. MEDICAL PROTECTIVE COMPANY OF FORT WAYNE, INDIANA, and another, Appellants.

*No. 1. Argued January 30, 1973.—Decided February 27, 1973.*
(Also reported in 204 N. W. 2d 663.)

For the appellants there was a brief by *Fulton, Menn & Nehs, Ltd., attorneys,* and *Peter S. Nelson* of counsel, all of Appleton, and oral argument by *Mr. Nelson.*

For the respondents there was a brief by *Paul & Slate,* attorneys, and *William R. Slate* of counsel, all of Markesan, and oral argument by *William R. Slate.*

HALLOWS, C. J.  Two issues are raised on this appeal: (1) Whether a release for personal injuries which barred a claim for medical malpractice could be amended by the parties thereto to reserve to the releasors their claim for malpractice against Dr. Sievers; and (2) whether the amended release which did not contain a reservation-of-rights clause released Dr. Sievers.

The original release was in such a form that by operation of law it had the effect of including the cause of action for malpractice. When this was realized, the Krenzes set about obtaining an amendment to the release. This took the form of a new release. The court did not amend the release but found the release was amended with the consent of parties to the original release. The affidavits in support of the motion to reopen the judgment against Laing and Schultz show the attorney for the insurance company insuring Schultz used a printed form release, filled in the blanks, and submitted it to the attorney for the Krenzes. The insurance company's attorney knew there was an action pending for malpractice against Dr. Sievers but gave no thought to what effect the release would have on the malpractice action, as he was concerned only with protecting his client. Neither he, his client, the other defendant, nor his insurer had any particular intent to release Dr.

Sievers and in fact did not think about that possibility. They apparently would have accepted a release with a reservation of rights. The attorney for the Krenzes apparently did not know the legal effect of the release which he had his clients sign.

Dr. Sievers argues there was no ground for reformation because there is no mutual mistake of fact presented, relying on *Bryan v. Noble* (1958), 5 Wis. 2d 48, 92 N. W. 2d 226, and *Holton State Bank v. Greater Milwaukee Food Merchants Asso.* (1960), 9 Wis. 2d 95, 100 N. W. 2d 322, 79 A. L. R. 2d 1176. But, these cases are not on point. This is not a case of a court's reforming a contract against the opposition of one party. The parties here were agreeable. A release is a unilateral contract and the intention of the parties as to its scope and effect is relevant. *See: Peiffer v. Allstate Ins. Co.* (1971), 51 Wis. 2d 329, 187 N. W. 2d 182; *Pokorny v. Stastny* (1971), 51 Wis. 2d 14, 186 N. W. 2d 284; *Plummer v. Leonhard* (1969), 44 Wis. 2d 686, 172 N. W. 2d 1; *Rensink v. Wallenfang* (1959), 8 Wis. 2d 206, 99 N. W. 2d 196; *Nelson v. Boos* (1959), 7 Wis. 2d 393, 96 N. W. 2d 813. We think the parties to a release can agree to amend it to conform to their intention or more precisely in the context of this case to exclude an effect they did not intend. Dr. Sievers relies on the *Holton State Bank Case* for the point that a court will not grant reformation if it will result in an injury to third parties. But we see no injury to Dr. Sievers. The original release in effect gave him a free ride without his knowledge, consent, or any consideration so far as the Krenzes' rights are concerned. He cannot stand in the position of a third-party beneficiary of a contract because the parties did not intend to contract for his benefit or intend any part of the promised consideration to go to him. Dr. Sievers stands in no equitable position. He is an alleged independent tort-feasor liable for his wrongdoing. He

did nothing to his damage in reliance on the original release and therefore the original parties to the release are not precluded from amending the release without his consent to fully express their intent.

Dr. Sievers contends the trial judge had no power under sec. 269.46 (1), Stats., to affect documents not a part of the original stipulation and order when he reopened the judgment in the case against Laing and Schultz and allowed the amended release to be the basis for the judgment. Stipulations upon which judgments have been entered have been reformed by the court under sec. 269.46 (1) ; *Kramer v. Bohlman* (1967), 35 Wis. 2d 58, 150 N. W. 2d 357; and we see no reason why a release forming the basis of a stipulation is not susceptible to reformation by the parties and to be substituted of record for it. It is quite true the original order granting judgment still stands, but the judgment entered pursuant thereto was reopened so that the original order, whether or not the court expressly so stated, has lost its vitality; the fact a new judgment has not been entered is immaterial to Dr. Sievers' rights.

It is also contended the amended release is in effect an assignment of a barred claim such as that which was struck down by this court in *Hartley v. St. Francis Hospital* (1964), 24 Wis. 2d 396, 129 N. W. 2d 235, 130 N. W. 2d 1. In *Hartley,* on the ground of public policy, this court would not recognize an assignment from the released tort-feasor of the right it received by subrogation from the assignee. The instant situation does not give rise to an assignment of a barred claim or of any claim to the Krenzes. Mr. and Mrs. Krenz had a cause of action against Dr. Sievers. By amending the release they expressed as of the time of the original release that only a certain part of the damages suffered by them— those which would normally be ascribed to the acts or omissions of Laing and Schultz—were to be covered by

the settlement. Consequently, the Krenzes reserved their cause of action for the remaining damages caused by the alleged negligence of Dr. Sievers.

Dr. Sievers argues that at the time of the original release, the statutes of limitation for any subrogated claim had run in his favor and thus he acquired a right to be free from subrogation. There is no merit in this claim because the instant suit stopped the statutes of limitation from running and if the release had not been amended, Laing and Schultz, or their insurers would have succeeded by subrogation to the Krenzes' rights in this action. Whether Dr. Sievers was free from liability depends upon whether the original release can be amended. The amendment was not effective as of its date but related back to the date of the original release. That was the intent of the parties. The fact the amendment took the form of a rewritten, separate instrument and carried a later date is immaterial.

The trial court found the amended release was sufficient to reserve the malpractice cause of action against Dr. Sievers, but under existing law this was error. The release contained no reservation to that effect. The amended release eliminated from the original release the words "all other persons, firms or corporations who are or might be liable," and purported to release only William J. Laing and Edward R. Schultz "from any and all claims . . . of whatever kind or nature . . . arising out of or resulting in any manner from injuries . . . sustained as a result of an accident which occurred . . ." The acceptance of $15,000 was "a compromise and final settlement of all claims on account of any dispute between the parties hereto as to whether the above named parties are liable . . ." The amended release does not express in language the intent of the parties to reserve to the plaintiffs their cause of action against Dr. Sievers as the present case law requires such intention to be

expressed. While the release is restricted to Laing and Schultz, it is general as to them and under the present law is sufficient to release Dr. Sievers because the liability of Laing and Schultz includes the damages attributable to the negligence of Dr. Sievers.

Wisconsin has long adhered to the doctrine that the enhancement of an injury resulting from malpractice is a direct result of the original injury and consequently the tort-feasor causing the original injury is liable, not only for the original injury but also for the subsequent aggravation by malpractice. *Selleck v. Janesville* (1898), 100 Wis. 157, 75 N. W. 975, 41 L. R. A. 563; *Selleck v. Janesville* (1899), 104 Wis. 570, 80 N. W. 944; *Pawlak v. Hayes* (1916), 162 Wis. 503, 156 N. W. 464. This doctrine in Wisconsin was based upon the rationale underlying the now rejected "but for" rule in torts and upon the theory of proximate cause. *Hooyman v. Reeve* (1919), 168 Wis. 420, 170 N. W. 282.[1] This doctrine has been followed in Wisconsin to the present;[2] although it does not apply where the malpractice results in a new injury rather than an aggravation of the original injury, the cases are in conflict as to what constitutes a new injury. *See* Annot. (1971), 39 A. L. R. 3d at p. 270. As a practical effect, the rule shifts from the injured party

[1] The rule in other jurisdictions has been placed on the reasoning that the additional harm is either: (1) A part of the original injury, (2) the natural and probable consequence of the tort-feasor's original negligence, or (3) the normal incidence of medical care necessitated by the tort-feasor's original negligence. 22 Am. Jur. 2d, *Damages*, p. 165, sec. 113; Annot. (1965), *Torts—Negligent Treatment of Injury*, 100 A. L. R. 2d 808; Restatement, *Torts* 2d, p. 496, sec. 457.

[2] *Fisher v. Milwaukee Electric Railway & Light Co.* (1920), 173 Wis. 57, 180 N. W. 269; *Retelle v. Sullivan* (1927), 191 Wis. 576, 211 N. W. 756; *Noll v. Nugent* (1934), 214 Wis. 204, 252 N. W. 574; *Greene v. Waters* (1951), 260 Wis. 40, 49 N. W. 2d 919; *Hartley v. St. Francis Hospital, supra.*

to the original tort-feasor the difficult burden of proving what part of the damages were caused by the original tort-feasor and what part by the subsequent negligence of the doctor, if such tort-feasor wishes to recoup by subrogation part of the damages he paid to the injured party. On public policy it is perhaps logical that tort-feasors should have the responsibility of dividing the loss and damage in terms of money unless the injured party, as here, sues the subsequent tort-feasor separately.

The traditional corollary rule followed in Wisconsin has been that a general release given to the tort-feasor responsible for the original injury, in the absence of a different intention positively revealed by the language of the release, precludes a malpractice action against the physician or surgeon for damages incurred by his negligent treatment of the injury. We think this release rule works a hardship and an injustice in many cases and is not necessary to avoid a double recovery by the injured party.

In *Hooyman* the court was considering a general release and did not find it necessary in applying the release rule to decide whether the first tort-feasor and the doctor were joint tort-feasors. The fact the release discharged the original tort-feasor, who was also liable for the damages caused by the doctor, was sufficient. The court reasoned because the plaintiff could have recovered all the damages sustained by him in an action against the original tort-feasor and the entire claim for damages had been satisfied, the general release was deemed to have included the damages for malpractice. In *Retelle v. Sullivan, supra,* the court found the language of the release broad enough to include the element of damage resulting from the doctor's negligence and grounded its decision on what it considered to be the expressed intent of the parties to that effect. The language consid-

ered was the broad language releasing the first tort-feasor from all claims against him of every kind and nature arising out of or on account of the injury. But the court presumed as a matter of law the parties intended the broad language to include damages caused by the subsequent negligence of the doctor because one element of the damages the plaintiff might have recovered against the first tort-feasor included the damages resulting from the malpractice. To justify this conclusion the court stated the first tort-feasor received a subrogation right from the injured party against the doctor to indemnify the first tort-feasor for the payment of damages caused by the doctor. As a result of this reasoning, the plaintiff was effectively foreclosed from a double recovery, a desirable result. But the concept that the injured party possibly could have a double recovery if there were no subrogation recognizes the fact that the injured person had a separate cause of action against the doctor for negligence aside from the action for negligence against the first tort-feasor and this raises the question of whether such a separate cause of action ought to require a separate release.

In *Noll v. Nugent, supra,* this court developed the implied-release doctrine to the point that the first tort-feasor and the doctor were not joint tort-feasors, and there was no common liability which would give rise to contribution. This would normally have weakened the rationale for the doctrine, but the court for the first time at page 208 stated, ". . . settlement by the first tort-feasor is presumed in law to have included compensation for the injury occasioned by malpractice, which was committed before the release of a prior tort-feasor." *Noll* also laid down the rule that the presumption of releasing the doctor's subsequent negligence is conclusive unless in releasing the prior wrongdoer there is saved to the injured person his cause of action against the

doctor by use of an appropriate provision in the release or by a covenant not to sue.

*Noll* thus required the intent of the parties to be expressed in a formal manner and in default thereof, their intent was determined by the conclusiveness of the presumption. While this language may have been *dicta,* because the doctor's negligence in *Noll* occurred after the execution of the release and the court held it was not covered by the release, nevertheless, the release rule became firmly embedded in our jurisprudence.

In *Greene v. Waters* (1951), 260 Wis. 40, 49 N. W. 2d 919, the release contained a reservation of rights and thus a full release had not been given and the conclusive presumption of intent did not apply.[3] In *Hartley v. St. Francis Hospital, supra,* the requirement of a formalized reservation of rights was again recognized and the concept of subrogation was firmly established. On the ground of public policy, the injured party was not allowed to sue the doctor for his negligence by way of an assignment of a cause of action from the first tortfeasor whom the injured party had released. If, however, the right of the first tort-feasor were simply based upon his payment of a claim, part of which the doctor should have paid, the first tort-feasor's right against the doctor logically would not have been derived from the injured party but would be one of indemnity. This theory, while adopted in the opinion of the court, was repudiated on rehearing and the subrogation theory that the first tort-feasor in the settlement acquired the right of the injured party to sue the doctor was adhered to. In *Butzow v. Wausau Memorial Hospital* (1971), 51 Wis. 2d 281, 187 N. W. 2d 349, this court reviewed the liability

[3] It is to be noted that in *Greene,* as in the instant case, both tort-feasors were sued although it would have been sufficient and less troublesome to sue only the original tort-feasor if he was financially responsible.

doctrine and its puzzling ramifications respecting the nature of the two independent causes of action in their relation to the question of venue.

We have no quarrel at present with the concept of the first tort-feasor's liability for damages due to subsequent aggravation of the original injury by the negligence of a doctor, although from our observation of the cases, this doctrine, while of longstanding, is not well known by the bar. The bar naturally and correctly considers an injured person to have a cause of action against each person who causes an injury and that is true in respect to the negligence of the doctor. What has been causing misunderstanding, confusion, and concern is the arbitrary-release rule that a release of the first tort-feasor releases an independent cause of action against the subsequent tort-feasor doctor, who is not a joint tort-feasor, when in fact none of the parties to the release contemplated or realized and in some instances did not understand that as being the legal effect of a general release of claims given to the original tort-feasor.

A growing number of courts have held or recognized that a release by an injured party of one responsible for the original injury does not of itself, in the absence of particular language indicative of such an intention, preclude an action by the injured party against a physician or surgeon for negligent treatment of the injury, at least where there has not been full compensation in fact for the injured party's total injuries. *See* Annot. (1971), 39 A. L. R. 3d 260. In this annotation, Arizona, California, Iowa, Maine, Massachusetts, Minnesota, Nevada, New Hampshire, New Jersey, New York, North Carolina (by statute), and Washington, are listed as adhering to this rule. The rationale of this view is the real intention of the parties should prevail, and it should not be controlled by an artificial conclusive presumption of law of the effect of general language. In *Ash v. Mortensen* (1944), 24 Cal. 2d 654, 150 Pac. 2d 876, the court re-

jected the traditional view of the effect of a general release, stating the rule was illogical in treating independent wrongdoers as joint tort-feasors or in applying by analogy the common-law principle of unity of discharge affecting joint tort-feasors, and that a release of one of the two separate causes of action should not release the other unless there has been full compensation for both injuries. Likewise, the court in *Smith v. Conn* (Iowa 1968), 163 N. W. 2d 407, 39 A. L. R. 3d 251, adopted the modern rule, stating the trier of fact was to decide the questions of whether the injured party intended by releasing the first tort-feasor to release the physician and whether the settlement in fact compensated the injured party for the malpractice damage. In so holding, it reversed any implied rule to the contrary in prior Iowa cases.

Our sister state of Minnesota has likewise in *Couillard v. Charles T. Miller Hospital, Inc.* (1958), 253 Minn. 418, 92 N. W. 2d 96, reversed its previous rule. The court noted that in earlier cases it had relied on the conclusive character of the release, reasoning that since a release is contractual in nature, the parol-evidence rule applied so as to prevent variation or contradiction of its terms to show the real intent of the parties. Prior releases had discharged all parties liable for the injury without reference to whether the releasor received full compensation and without reference to the actual intent of the parties to the release. The court in *Couillard* considered this approach to the effect of a release to be arbitrary, going beyond any rule reasonably necessary in order to honor the principle of law that a litigant should not recover twice for the same injury. As a further ground for its holding, the court pointed out that the prior cases offended the basic principle of law that an injured party should be wholly compensated for his injuries where liability exists. Thus on the ground of practical justice, the court stated the plaintiff should

not be compelled to surrender his claim for relief against the wrongdoer unless he had intentionally done so or unless he had received full compensation for his claim. The receiving of full compensation, of course, is not the same as satisfying a claim in full.

In *Milks v. McIver* (1934), 264 N. Y. 267, 190 N. E. 487, New York adopted the rule that a general release of the original wrongdoer released the physician regardless of the intent of the plaintiffs; but in *Derby v. Prewitt* (1962), 12 N. Y. 2d 100, 236 N. Y. Supp. 2d 953, 187 N. E. 2d 556, the court held that a general release would not in and of itself prevent the plaintiff from suing the doctor for malpractice. The court stated the effect of a release should not be determined as a matter of law and the question of whether the plaintiff's settlement actually constituted or was intended as a satisfaction of all damages caused by the first tort-feasor's fault was a question of fact. Thus the New York court based the effect of the release on the concept of full compensation and intention.

Other courts have held or implied that an action for damages for malpractice will be allowed if the evidence shows there was no intent to release the subsequent tort-feasor or to accept the settlement as full compensation. *Galloway v. Lawrence* (1965), 263 N. C. 433, 139 S. E. 2d 761; *Wheat v. Carter* (1919), 79 N. H. 150, 106 Atl. 602; *Daily v. Somberg* (1958), 28 N. J. 372, 146 Atl. 2d 676, 69 A. L. R. 2d 1024; *Hansen v. Collett* (1963), 79 Nev. 159, 380 Pac. 2d 301; *Selby v. Kuhns* (1963), 345 Mass. 600, 188 N. E. 2d 861.

We think the present rule in Wisconsin as to release should be changed and there should be a rebuttable presumption that a general release of the original tort-feasor does not release the malpractice cause of action against the doctor for damages which might be recovered against the original tort-feasor, unless the intention to do so is

clearly and expressly stated in the release. This change of rule replaces the present requirement that the intent not to release the malpractice claim can only be expressed by a reservation of rights against the doctor. What language is sufficient to state the intent to release the subsequent negligent doctor is to be decided on the facts of each case. No precise formula is necessary; but, the general release of all claims against the original tortfeasor will not without more be sufficient to show an intent to release the doctor.

Under this rule the doctor who claims the benefit of a general release as a third-party beneficiary will have the burden of proving that a release of the original tortfeasor also in fact released him of his negligence. We think this rule is in accord with the natural understanding of injured parties and their counsel; it gives weight to the fact the physician has himself committed a tort and will avoid the present confusion and some instances of injustice which occurred under the overruled cases.[4] Lawyers, of course, will still be required to exercise their skill and knowledge and cannot rely unthinkingly on form releases. Because of the number of cases appearing in the Wisconsin Reports concerning the traditional-release rule, we do not attempt to overrule them by name nor does this opinion affect the substantive rule of liability of the tort-feasors.

While the trial court was in error in determining the release did not bar the cause of action in the instant case against Dr. Sievers, we find under the newly adopted rule, the release is sufficient to express an intent not to release Dr. Sievers.[5] The amended release was personal

---

[4] For further discussion of the problem, see Comment, 40 N. C. L. Rev. (1961), 88; Comment, 27 Albany L. Rev. (1963), 231, 233, et seq.; Note, 28 Fordham L. Rev. (1959), 171.

[5] See McMillen v. Klingensmith (Tex. 1971), 467 S. W. 2d 193 (release named only original tort-feasor and did not refer to any other party).

and by its terms released only all claims against Laing and Schultz; it named or referred to no other persons and accepted the consideration as a compromise and final settlement of all claims between the parties and did not purport to acknowledge the consideration as full compensation for all injuries.

*By the Court.*—Order affirmed.