Charles R. PETERSON and Neva R. Peterson, Appellants (Defendants below),

v.

FIRST NATIONAL BANK OF LANDER, Lander, Wyoming, a United States Bank Corporation, Appellee (Plaintiff below).

No. 4857.

Supreme Court of Wyoming.

June 6, 1978.

Robert B. Denhardt, Lander, for appellants.

Richard D. Gist, of Gist & Moffat, Lander, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

GUTHRIE, Chief Justice.

This is an appeal from entry of a summary judgment against the appellants, Charles R. Peterson and Neva R. Peterson. Plaintiff, appellee herein, is a banking institution in Lander, Wyoming, which sought the foreclosure of certain real estate mortgages upon a ranch near Lander, which was owned by Earl J. and Marjorie H. Borton, who sold and conveyed this ranch to appellants on July 1, 1976. During the time that the Bortons owned these lands they executed two mortgage deeds to the bank to secure the accompanying promissory notes. The first mortgage was executed on March 1, 1971, to secure an unpaid balance of $24,500, and was thereafter recorded in the office of the County Clerk of Fremont County in Book 154 of Mortgages at page 494, and which covered and described the following lands:

N½NW¼ Sec. 27, Township 1 South, Range 1 East, Wind River Meridian, Fremont County, Wyoming, containing 80 acres, more or less;
N½SE¼, SW¼SE¼, SE¼SW¼ Section 28, Township 1 South, Range 1 East, Wind River Meridian, Fremont County, Wyoming.

On December 27, 1974, the Bortons executed and delivered to the bank another mortgage deed which was duly recorded in the office of the county clerk on January 9, 1975. This mortgage omitted the N½NW¼ of Section 27, which was included in the mortgage first above mentioned, and in place thereof substituted the N½SW¼ of Section 27; and it is the claimed mortgage upon this 80-acre tract which occasioned this controversy.

On July 1, 1976, the Bortons conveyed, by deed to appellants, the lands which were described in the mortgage deed dated March 1, 1971,[1] which deed contained only the following exceptions:

"subject to the rights of other mineral right owners to use so much of the surface as is reasonably necessary to the use and enjoyment of such owners' rights."

and:

"subject to rights of way and easements as now established, reservations and restrictions of record, if any, general taxes for 1976 due and payable in 1977."

Neither of these mortgages was mentioned in the contract of sale or the deed which was delivered. Petersons executed and returned to Bortons a mortgage on these lands to secure the sum of $150,000 on July 1, 1976, for the purchase thereof, and the Petersons also went into possession of these premises on or about that date.

On September 23, 1976, the bank secured from the Bortons a so-called "Corrective Mortgage Deed," which states as its purpose that it was to correct the second mortgage herein and to reaffirm said mortgage, and which recites that the original mortgage should have read, and follows with the description of, the N½NW¼ of said Section 27.

From the above it will be obvious that this controversy involves the claim of a lien in favor of appellees and a decree for foreclosure upon the N½NW¼ of said Section 27 as against appellants. A summarization of the complaint, which is lengthy and voluminous, is sufficient for an understanding

---

[1]. For brevity, and to avoid needless repetition, these mortgages will be described in chronological order as first, second, and third in the course of this opinion.

of this matter. The complaint contains ten counts, the first nine of which are directed at the foreclosure of these lands and other demands arising on chattel agreements as against defendants Earl J. and Marjorie H. Borton. In the fourth count the appellee alleged that there was an error in the second mortgage which was subsequently corrected by the third mortgage, and attached to the complaint the so-called corrective mortgage. Although the tenth count realleges all that had been pleaded in the earlier counts, insofar as it is directed against appellants it asserts "that the Mortgages of the Plaintiff (Exhibits B, D and E) [2] are a lien on the premises superior to any claim of Charles R. Peterson and Neva R. Peterson or any lien of Bortons."

There is no appeal by the Bortons, so no reference is made to the court's judgment except that which is directed solely as against appellants and the appellee's recognized right of foreclosure upon the 80 acres omitted from said second mortgage and that it is a lien superior to the title of appellee.

The summary judgment entered herein finds generally for appellee and against appellants and sets out the first mortgage and the so-called second mortgage, but recites the error therein and that it "was subsequently corrected by Mortgage dated 23 September, 1976." It then, in apparent reference to the second mortgage, finds that it "should be foreclosed and the property described therein and remaining subject to the same shall be sold." The decretal part of this judgment orders the foreclosure upon all the lands, including the 80 acres omitted from the second mortgage. This is in error insofar as reliance is apparently placed upon the so-called second mortgage because the corrective mortgage was nearly three months after the record title and possession had passed to appellants and at a time when the mortgagors in the so-called corrective mortgage were in effect strangers to the title. We are familiar with no legal theory upon which this finding could be based, which in effect would recognize the correction made by the Bortons without consideration of the intervening rights of appellants. Appellants raise this question in their brief, and appellee in reply does not meet this contention or cite either authority or cogent argument which would support any claim that this mortgage could convey any interest adverse to appellants, so we must presume there is no such authority and will not consider the same, *In re Morgan's Estate*, Wyo., 568 P.2d 892, 896. The trial court, in apparent reliance thereon, however, reformed the so-called second mortgage to include the 80-acre tract which was omitted, and the use of the word "corrected" does not conceal the fact that this is in effect a reformation.

Although the judgment and pleadings herein avoid the term "reformation," it is obvious that there is no other basis upon which a foreclosure could be enforced under the so-called second mortgage because it did not describe this 80-acre tract. Reformation has been said to be the enforcement of an actual agreement not expressed in a contract, *Ramseier v. Oakley Sanitary*, 197 Cal.App.2d 722, 17 Cal.Rptr. 464, 466; or as expressed in *Aetna Life Ins. Co. v. May*, 217 Ark. 215, 229 S.W.2d 238, 241:

"  *  *  *  The reformation of a contract [said Judge McCulloch] involves an effort to enforce it as reformed,  *  *  * "

Reformation is involved in this case as it is the only conceivable way that the trial court could order a foreclosure on the second mortgage and include therein the 80-acre tract omitted therefrom.

Appellee contends that because of the fact the first mortgage contained a proper description of all these lands, including the 80-acre tract in dispute, and that the second mortgage covered only 160 acres thereof and included another tract not owned by Bortons, appellants were put upon notice and had a duty to inquire and that "these signs and signals" in the record amount to notice to them. This cannot be applied to sustain this summary judgment. We do not gainsay that there may be cir-

---

**2.** Being the mortgages before mentioned.

cumstances or factual situations from which notice may be inferred, but when reliance is placed thereon summary judgment is not a proper remedy because this is a factual determination to be made by the trier of fact. "Whether a party has notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and whether by prosecuting such inquiry he might have learned such fact, are questions of fact for the court or jury," *Pflueger v. Hopple*, 66 Idaho 152, 156 P.2d 316, 318; *Saxon v. Dubois*, 209 Cal.App.2d 713, 26 Cal.Rptr. 196, 200; *Vaughan v. Fuller*, 278 Ala. 25, 175 So.2d 103, 105; 66 C.J.S. Notice § 22, pp. 675–676.

The record "is constructive notice of its contents, it is not constructive notice of any mistake contained therein," *Edwards v. Sergi*, 137 Cal.App. 369, 30 P.2d 541, 543; *Zumwalt v. Goodwin*, 10 Cir., 133 F.2d 984, 988; *Turner v. Liner*, 31 Cal.App.2d 196, 87 P.2d 740, 743; *Pan-American Life Ins. Co. v. Crymes*, 169 Miss. 701, 153 So. 803, 806; *Bartkowiak v. Kley*, Sup.Ct., 9 N.Y.S.2d 986, 987. From this record there is definitely no evidence of actual notice. An examination of the contract which set out the terms of sale of these premises from Bortons to Petersons reveals no mention of either of these mortgages, nor is any exception made or any mention made of either of these two mortgages in the warranty deed. This court finds it hard to understand how a transaction of this size could be handled in such a careless manner and with so little regard for the protection of the interests of either Bortons or Petersons. It may be suggested that Bortons may well be exposed to some liability for failure to except these mortgages in their deed and that Petersons were obviously adversely affected.

■ Inasmuch as the nature of this remedy involves the reformation of the so-called second mortgage adverse to the interests of appellants and the alleged error in description is not in and of itself of such nature as to put them on notice, reforma-

tion will not lie, *Holland v. Windsor*, Wyo., 461 P.2d 47, 51,[3] absent actual notice to appellants, which we do not find in this record.

It is worthy of note that had appellants examined the so-called second mortgage they would have found it was entirely regular upon its face and there was nothing therein which would call attention to any mistake or irregularity.

■ Although we have heretofore said that the burden of proof at trial is upon the party asserting the defense of a bona fide purchaser in good faith, *York v. James*, 60 Wyo. 222, 148 P.2d 596, 598, this will not aid the appellee in this case because no showing has been made that the intervening right of appellants was not acquired without notice and in good faith. Absent such showing, movant has failed to carry its burden "of showing the absence of a genuine issue of material fact," *Knudson v. Hilzer*, Wyo., 551 P.2d 680, 685; nor could movant be aided in a summary judgment proceeding by the fact that the burden of proof upon the trial would rest upon appellants to establish that they were such purchasers, *Mealey v. City of Laramie*, Wyo., 472 P.2d 787, 792. This record is insufficient and we are unable to determine whether these purchasers are such bona fide purchasers without notice, and no showing is made that they had notice of this claimed mortgage lien which the court enforced.

■ We have reviewed the record insofar as it supports the demand for summary judgment against these appellants. The sole affidavit filed by appellee in support of this motion is that of Ralph B. Williams, president of the appellee bank. This affidavit sets out in rather complete detail the dealings of the bank with the Bortons, and there is included therein evidence of the making and recording of the mortgages with which we are concerned, along with the statement that:

"The Plaintiff's Mortgages are liens on real estate, to-wit:

**3.** See *Holton State Bank v. Greater Milwaukee Food Merchants Association*, 9 Wis.2d 95, 100 N.W.2d 322, 79 A.L.R.2d 1176, 1179–1180, and particularly the annotation beginning at page 1180.

"N½NW¼ Sec. 27, Township 1 South, Range 1, East, Wind River Meridian, Fremont County, Wyoming, containing 80 acres, more or less;"

Such conclusory statement cannot be used to support this summary judgment, *Keller v. Anderson*, Wyo., 554 P.2d 1253, 1258. With reference to the mistaken description, he states:

"* * * That the Mortgage contained a typographical error and the Defendants [Bortons] subsequently on September 26, 1976, issued a corrective mortgage, * * "

It is notable that there is no reference in said affidavit to the Petersons, or their dealings, or their knowledge or notice of this error in the mortgage. In addition, there are copies of the instruments which bear upon these dealings and which appear in the file, the three mortgages given by Bortons to appellee, the contract for sale of these lands between Bortons and Petersons entitled "Specific Performance Contract," and the deed from Bortons to Petersons, none of which make mention of this mortgage. Upon this record we must determine that this summary judgment was improperly granted. There is insufficient basis for the entry of this judgment, and particularly that the movant-appellee failed in its burden of establishing that there was no conflict of material fact, *Timmons v. Reed*, Wyo., 569 P.2d 112, 116.

Reversed and remanded for trial.