373 So.2d 944 (1979)
CITY OF LAUDERDALE Lakes, Etc., et al., Appellants,
v.
UNDERWRITERS AT LLOYDS and Frank A. Stuart, M.D., Appellees.
No. 78-562.
District Court of Appeal of Florida, Fourth District.
August 1, 1979.
Rehearing Denied September 4, 1979.
*945 Edna L. Caruso, P.A. and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellants.
Ricardo J. Cata of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellee Frank A. Stuart, M.D.
LETTS, Judge.
One Paula Bissonette sustained back injuries in an automobile accident because of the negligent operation of another vehicle by a city employee. Thereafter these injuries were allegedly aggravated by reason of her physician's malpractice in performing an unnecessary and unsuccessful laminectomy and fusion to her spine. The city settled with Paula Bissonette and thereafter filed a separate lawsuit for indemnification against the physician. Following this filing, the Florida Supreme Court decided Stuart v. Hertz Corporation, 351 So.2d 703 (Fla. 1977) and the trial court granted summary judgment against the city denying its motion to amend the complaint in order to seek, not indemnification, but instead subrogation of Paula Bissonette's cause of action against her physician for malpractice. We reverse.
Simply, Hertz stands for the proposition that an active tortfeasor may not bring a third party action claiming indemnity against a physician who by malpractice has directly aggravated the aggrieved plaintiff's injuries. This holding, based upon the traditional concept that no one should be permitted to "found" a cause of action predicated on his own wrong also stated:
The choice of when and whether to sue [her] treating physician for medical malpractice is a personal one which rightfully belongs to the patient. A complete outsider, and a tortfeasor at that, must not be allowed to undermine the patient-physician relationship, nor make the plaintiff's case against the original tortfeasor longer and more complex through the use of a third party practice rule which was adopted for the purpose of expediting and simplifying litigation.
We do not believe that our decision here is at odds with Hertz, for this is no third party action which will make the plaintiff's claim longer and more complex. Nor is it the plaintiff who is suing the treating physician. Rather it is an active tortfeasor who, by way of subrogation, understandably seeks retribution for that portion of the plaintiff's injuries directly attributable to the negligence of another. Other jurisdictions have permitted such a remedy. See Greene v. Waters, 260 Wis. 40, 49 N.W.2d 919 (1951); Fietzer v. Ford Motor Company, 383 F. Supp. 33 (E.D.Wis. 1974); Fisher v. Milwaukee Electric Ry. and Light Company, 173 Wis. 57, 180 N.W. 269 (1920) and Clark v. Halstead, 276 App.Div. 17, 93 N.Y.S.2d 49 (S.Ct.App.Div. 1949). See also 73 Am.Jur.2d Subrogation § 40.
Yet we are troubled by our conclusion and note that in Hertz one question was "... whether to apportion the loss between initial and subsequent rather than joint or concurrent tortfeasors" (p. 706). We are also conscious of the result in Hertz which permitted the offending physician to escape liability altogether. For those reasons we certify the question hereafter to be stated.
This writer was impressed with a question from Judge Beranek at oral argument on this case, which question supposed an automobile accident in which the plaintiff sustained a broken right leg. Thereafter, *946 at the hospital, though bizarre, and admittedly improbable circumstance, Judge Beranek's hypothesis foresaw a mistaken amputation of the left leg instead of a repair of the right one. Is the man who caused the accident by running the red light to pay for all of this, while the grossly offending hospital and its surgeons go free? We hope not. It is true that in Judge Beranek's example, "but for" the running of the red light the innocent plaintiff would have two sound legs and we recognize the amputee's right to full redress from the original tort-feasor. However, it seems ridiculous that the subsequent tortfeasor can escape a share of the blame. It is all very well to make it "personal" to the patient as to whether she will sue her physician. Yet we can be assured she wants recompense for her surgeon's share of her miseries and if she does, she is certainly placing her pecuniary desires ahead of the personal patient-physician relationship which we are asked to so jealously guard.
Following the Hertz decision we rendered our opinion in Ewell Engineering & Contracting Co. v. Cato, 361 So.2d 728 (Fla. 4th DCA 1978) and there extended the third party bar to cover not only indemnity but also all other third party claims. However, the case before us now is not a third party claim and it does not "make the plaintiff's case against the original tortfeasor longer and more complex." Instead it is a separate lawsuit bottomed on subrogation principles which we hold to be proper. Our conclusion is reached not only on our version of common sense, but also on our concept of fundamental fairness. To us it makes no sense to allow a negligent physician to receive total immunity for his folly because of a prior, and possibly minor, injury inflicted by the negligence of another.
However, mindful of our subservient position and respectful of the law, we hereby certify the following question to the Supreme Court, deeming it to be a matter of great public interest.
DOES THE DECISION IN STUART v. HERTZ BAR A SEPARATE LAWSUIT BY THE INITIAL TORTFEASOR AGAINST A SUCCESSIVE TORT-FEASOR WHO AGGRAVATES THE ORIGINAL INJURIES?
The summary judgment is reversed and this cause is remanded for further proceedings.
DAUKSCH and BERANEK, JJ., concur.