## A.S. JOHNSON CO., et al., Appellants,

v.

## ATLANTIC MASONRY CO., et al., Appellees.

### No. 96–CV–69.

District of Columbia Court of Appeals.

Argued Feb. 25, 1997.

Decided May 1, 1997.

Tina L. Snee, for appellants.

Wade J. Gallagher, Washington, DC, for appellees.

Before FERREN, STEADMAN, and SCHWELB, Associate JJ.

FERREN, Associate Judge:

██ A.S. Johnson Co. and its insurer, Liberty Mutual Insurance Co. (collectively "Johnson"), appeal from the trial court's order dismissing their claim for indemnity or contribution from Atlantic Masonry Co. ("Atlantic") and its insurer, CNA Insurance Co. A.S. Johnson and Atlantic Masonry were both subcontractors of Sigal Construction Co. when an Atlantic employee was injured on the job site. The employee collected worker's compensation from Atlantic and brought negligence actions against Johnson and Sigal, both of which settled with him before trial. Sigal then filed an arbitration claim against Johnson seeking indemnification for the amounts Sigal paid to the employee. Johnson filed the present action against Atlantic, asking for indemnification or contribution as a third-party beneficiary of a contract between Atlantic and Sigal that required Atlantic to indemnify not only Sigal, the general

contractor, but also "other contractors or subcontractors" of Sigal for amounts paid as a result of Atlantic's negligence. Johnson argues that the trial court erred in concluding, on the limited pretrial record before it, that Johnson was not a third-party beneficiary of the Atlantic/Sigal contract's indemnity provision, and in dismissing Johnson's complaint on the defendants' motion before answers were filed. We agree with Johnson and reverse the dismissal of its suit against Atlantic.[1]

## I.

A.S. Johnson and Atlantic Masonry were both subcontractors of Sigal Construction, the general contractor, on the construction of an office building at 1150 18th St., N.W. The contract between Atlantic and Sigal contained a provision requiring Atlantic to indemnify "the Owner, SIGAL ... *and other contractors and subcontractors*" against all claims "arising out of or resulting from the performance of [Atlantic's] work ... to the extent caused or alleged to be cause in whole or in any part by any negligent act or omission of [Atlantic] ... regardless of whether it is caused in part by a party indemnified hereunder." (Emphasis added.)

On April 10, 1990, Mauricio Marquez, an Atlantic employee, was injured at the worksite when he fell several floors through a duct. Marquez received worker's compensation from Atlantic and then sued Johnson, alleging the duct was improperly covered, and Sigal, alleging a violation of Sigal's duty to provide a safe workplace. Johnson filed a motion to add Atlantic as a third-party defendant so that Johnson could pursue its indemnification claim against Atlantic in the same suit, but the trial court denied this request. Both Johnson and Sigal settled with Marquez before trial.[2]

After settling the underlying suit with Marquez, Sigal filed an arbitration claim against Johnson seeking indemnification for the funds Sigal had paid Marquez. See *supra* note 2. Johnson's attempt to add Atlantic as an "indispensable party" to that arbitration proceeding was unsuccessful. At the time the trial court dismissed the present suit, this arbitration claim was unresolved.

Johnson, in a third effort to reach Atlantic, filed a separate claim against Atlantic with the American Arbitration Association, again seeking indemnification or contribution. Atlantic then filed a complaint in Superior Court to stay the arbitration proceeding, arguing that there was no agreement to arbitrate between Johnson and Atlantic, and that Johnson had no agreement with Atlantic providing for indemnification. Without explanation, the court denied Johnson's corresponding motion to compel arbitration and dismissed Johnson's arbitration proceeding against Atlantic.

Johnson then filed the present action in Superior Court against Atlantic, seeking indemnification or contribution for the amount paid in settlement to Marquez and for any amount Johnson was required to pay to indemnify Sigal. Atlantic filed a motion to dismiss pursuant to Super.Ct.Civ.R. 12(b)(6). The court granted Atlantic's motion, ruling that Johnson was merely an incidental beneficiary of the contract between Sigal and Atlantic that required Atlantic to indemnify "other contractors and subcontractors." Johnson appealed.

## II.

Johnson's appeal is premised on its fundamental argument the trial court rejected: that Johnson, as a "subcontractor" of Sigal, is

---

**1.** It is unclear whether Johnson challenges the dismissal of its claim against CNA Insurance Co., Atlantic's insurer. Johnson's initial brief does not mention the propriety of naming CNA as a defendant, and Johnson's reply brief offers no response to Atlantic's argument that a direct action against CNA under the circumstances of this case is not permitted. "[L]iability policies are only required to afford a direct action by an injured party against an insurer after a judgment has been obtained against the assured, which is unsatisfied after execution." *Gorman v. St. Paul Fire & Marine Ins. Co.*, 210 Md. 1, 121 A.2d 812, 815 (1956). We therefore affirm the order insofar as it dismisses Johnson's claim against CNA.

**2.** Sigal settled with Marquez for $1.1 million. While there are conflicting accounts in the record of the amount Johnson paid Marquez, it appears Johnson paid him $1 million or $1.1 million.

a third-party beneficiary of the Sigal–Atlantic contract and thus can seek indemnification from Atlantic for payments to Marquez.

Atlantic rejects that argument and adds four other reasons to support the trial court's order dismissing Johnson's claim: (1) it was a compulsory counterclaim that should have been asserted when Atlantic sought to stay Johnson's arbitration proceeding against Atlantic; Johnson's failure to file the counterclaim in that proceeding, therefore, forecloses the present lawsuit; (2) the issues in the present case were actually decided by the trial court in dismissing the arbitration claim; thus, principles of collateral estoppel preclude re-examination of whether Johnson can benefit from the Sigal–Atlantic indemnification clause; (3) the worker's compensation statute prevents Johnson from suing Atlantic, Marquez's employer, for contribution or indemnity, because there was no express agreement between Johnson and Atlantic to waive that otherwise exclusive remedy against Atlantic; and (4) Johnson cannot seek indemnification from Atlantic because Atlantic's employee, Marquez, alleged that Johnson itself was negligent, and a party may not be indemnified for its own negligent conduct unless a contractual indemnity provision unambiguously so provides—which the Sigal–Atlantic contract does not.

Because Atlantic argues for several procedural barriers against Johnson's claim, we address those contentions before considering the merits of the claim under the Sigal–Atlantic indemnification clause.

### A.

■ We cannot agree with Atlantic's contention that Johnson's indemnification claim was a compulsory counterclaim to Atlantic's complaint to stay arbitration. Even if we assume that Johnson's claim "ar[ose] out of the same transaction or occurrence," Super Ct.Civ.R. 13(a), as Atlantic's suit to stay arbitration of the same underlying dispute, it is clear from the text of Rule 13(a) and from the statutory provisions governing arbitration proceedings that Johnson did not have a compulsory counterclaim.

Rule 13(a) provides, with exceptions not relevant here:

> A *pleading* shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim. . . .

Super.Ct.Civ.R. 13(a) (emphasis added). The rules further describe the permitted types of pleadings, including complaints and answers, and distinguish "pleadings" from "motions" and other papers filed with the court. Super.Ct.Civ.R. 7.[3] To take one obvious example, a motion to dismiss for failure to state a claim, pursuant to Super.Ct.Civ.R. 12(b)(6), is not a "pleading." *See* Super.Ct.Civ.R. 7(b)(1) ("Application to the Court for an order[, e.g., dismissing a complaint,] shall be by *motion*. . . .") (emphasis added); *Lawhorn v. Atlantic Refining Co.*, 299 F.2d 353, 356 (5th Cir.1962) ("Rule 12(b) makes a clear distinction between a *pleading* and certain motions, including a motion to dismiss."). The response to such a motion, therefore, would not be considered a pleading.

■ Atlantic filed its request to stay the arbitration proceedings under D.C.Code § 16–4302(b) (1989 Repl.), which authorizes the Superior Court, "[o]n application," to stay pending or impending arbitration proceedings. The critical language for analyzing the compulsory counterclaim issue appears, however, in D.C.Code § 16–4315, which states that "an application to the Court under this chapter [i.e. Title 16, Chapter 43, governing arbitration] *shall be by motion*." D.C.Code § 16–4315 (emphasis added). Thus, Atlantic's application for stay of the Johnson/Atlantic arbitration claim—although styled a "Complaint to Stay Arbitration"—was simply a motion requesting a court order and not a pleading at all. It follows that Johnson's

---

3. Rule 7(a) provides:

   *Pleadings.* There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a 3rd-party complaint . . .; and a 3rd-party answer, if a 3rd-party complaint is served. No other pleading shall be allowed, except that the Court may order a reply to an answer or a 3rd-party answer.

response to this motion—although styled an "Answer to the Complaint to Stay Arbitration"—was not a pleading. Because Johnson never was required to file an actual "pleading," therefore, and because in fact Johnson never filed one, the obligation under Super.Ct.Civ.R. 13(a) to assert in "a pleading" all counterclaims related to the underlying claim never arose. *See, e.g., United States v. Snider,* 779 F.2d 1151, 1157 (6th Cir.1985) (concluding that "Rule 13(a) only requires a compulsory counterclaim if the party who desires to assert a claim has served a pleading"); *Martino v. McDonald's Sys., Inc.,* 598 F.2d 1079, 1082 (7th Cir.1979) (concluding that Rule 13(a) did not apply when lawsuit was terminated with consent judgment before answer was filed); *Lawhorn,* 299 F.2d at 356–57 (concluding that party who successfully presents motion to dismiss before filing answer was not required by Rule 13(a) to assert transactionally-related counterclaim because it had never been required to file pleading). The rule barring litigation of claims which should have been asserted as compulsory counterclaims in a prior proceeding, therefore, has no application here.[4]

### B.

■ We also are not persuaded by Atlantic's argument that collateral estoppel prevents Johnson from maintaining its indemnification claim against Atlantic. While recognizing that the trial court provided no reasons for dismissing Johnson's arbitration claim, Atlantic contends, nonetheless, that in deciding there was no arbitration agreement between Atlantic and Johnson, the court necessarily decided that Johnson was not a third-party beneficiary entitled to recover under the indemnification agreement in the Sigal–Atlantic contract. We cannot agree.

When a court hears an application to stay arbitration, the only relevant legal question is whether the parties had an agreement to arbitrate their underlying dispute. *See* D.C.Code § 16–4302(b) ("On application, the Court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate."). The statute provides, moreover, that "[a]n order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown." D.C.Code § 16–4302(e). The trial court, therefore, in dismissing Johnson's arbitration claim, did not—because it could not—reach any conclusion save one: that there was no arbitration agreement between Johnson and Atlantic, a ruling that Johnson does not contest in the present suit.

Although one easily could imagine a case in which a decision that there was no agreement to arbitrate would be conclusive on the issues of the underlying dispute,[5] this is not such a case. Johnson can be a third-party beneficiary of the Sigal–Atlantic contract without being able to invoke the arbitration clause of that same contract. It would not be unreasonable to conclude that Johnson's status as an intended beneficiary of the Si-

---

4. *Atlantic's effort to recast this argument under res judicata theory does not work. While there may be cases where res judicata applies even though the party was not required to file a counterclaim, this is not such a case. Res judicata would not apply unless the new action was, fundamentally, an attack on the validity of the prior judgment. See, e.g., Martino,* 598 F.2d at 1083–84 *(applying res judicata after rejecting compulsory counterclaim argument, where new action asserted affirmative claim identical to defense it could have asserted at proceeding that resulted in prior judgment, and thus acceptance of new claim would have been tantamount to invalidating prior judgment). In the present case, Johnson does not attack the validity of the prior court's ruling that there was no agreement to arbitrate the dispute between Johnson and Atlantic. Johnson merely seeks legal resolution of the underlying dispute. If Johnson prevails, the* court's ruling on the stay of arbitration would not be undermined in the least.

5. *Take, for example, a case where the plaintiff alleges that she has a written contract with the defendant that contains an iron-clad arbitration clause, but the defendant claims that the plaintiff had never signed the contract and that the signature on the contract purporting to be hers is a forgery. A decision that there was no agreement between the plaintiff and defendant to arbitrate would necessarily encompass a finding that the plaintiff and defendant had never entered into this written contract. On those facts, it would appear that collateral estoppel would prevent the plaintiff from relitigating the question of the contract's validity by pursuing a separate legal action. Clearly, this is not our case.*

gal–Atlantic contract is insufficient to create an agreement between Johnson and Atlantic to arbitrate any dispute between them; the merits of Johnson's claim are therefore distinct from the question whether Johnson's claim is arbitrable.[6]

## C.

■ With Atlantic's preliminary, procedural challenges out of the way, we are ready for the merits of Johnson's argument on appeal: that it was a third-party beneficiary of the Sigal–Atlantic contract and, as a consequence, could sue Atlantic for indemnification for settlement with Atlantic's employee, Marquez. The trial court dismissed Johnson's claim on the rationale that Johnson was merely an incidental beneficiary of the Sigal–Atlantic contract and, therefore, had no contractual basis for its lawsuit against Atlantic. We cannot accept the trial court's reasoning; we conclude from the plain language of the contract that Johnson was an intended beneficiary of the indemnification clause, which is reproduced in its entirety in the footnote below.[7] Johnson accordingly acquired the legal right to enforce the clause.

■ After noting the general rule that a third-party beneficiary of a contract has the legal right to enforce it if the parties intended that party to benefit from a particular provision, the trial court concluded that no such intent was apparent from the indemnification clause:

> [T]he only conceivable basis for concluding that Johnson was somehow intended to be a beneficiary of the contract is the general language of § 18.1 cited above. That does not appear to be sufficient to allow Johnson, which was sued by the injured worker and settled with him as the trial neared its end, to claim the benefits of a contract to which it was not a party and which does not specifically indicate that Johnson was to benefit from its provisions.

To the contrary, we believe it is apparent from the plain language of the indemnification clause that it was intended to benefit Johnson and other subcontractors. See *supra* note 7. That is all the law requires. "One who is not a party to a contract nonetheless may sue to enforce its provisions if the contracting parties intend the third party to benefit directly thereunder." *Western Union Tel. Co. v. Massman Constr. Co.*, 402 A.2d 1275, 1277 (D.C.1979). The clause requires Atlantic to indemnify not only the owner of the property and Sigal itself but also "other contractors and subcontractors." See *supra* note 7. This additional language would be meaningless unless we interpret it as manifesting an intention to benefit John-

6. The fact that Atlantic asserted as a ground for dismissing the arbitration claim that it did not have an agreement to indemnify Johnson does not mean that the court, by deciding in Atlantic's favor, accepted Atlantic's position. At the same time, Atlantic also argued that there was no affirmative agreement between Johnson and Atlantic to arbitrate and, therefore, that Atlantic could not be forced into arbitration without its consent. Because it would have been improper for the court to dismiss the arbitration claim based on its view of the merits of the dispute between Atlantic and Johnson, we will not conclusively presume that the court decided the case on that rationale, rather than on the lack of an arbitration agreement. We therefore cannot say the court necessarily concluded that Johnson had no legal rights under the indemnification clause of the Sigal–Atlantic contract.

7. Section 18.1 of the Sigal–Atlantic contract provided:

> To the fullest extent permitted by law, the Subcontractor [Atlantic] shall indemnify and hold harmless the Owner, SIGAL (including its affiliates, parents and subsidiaries) *and other contractors and subcontractors* and all of their officers, directors, agents and employees from and against all claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's work provided that: (1) any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in any part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, *regardless of whether it is caused in part by a party indemnified hereunder;* and (2) such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Section 18.

> (Emphasis added.)

son and those in a similar situation who are required to pay damages as a result of the contracting party's—Atlantic's—negligence. The duty to indemnify, moreover, is expressed in terms that make the duty run directly to the indemnitees, including the other subcontractors.

While Johnson was not specifically named as such in the Sigal–Atlantic contract, Johnson fell within a specifically named and designated class of "subcontractors" that clearly were to benefit from the indemnification agreement. See *supra* note 7. In *Moran v. Audette*, 217 A.2d 653 (D.C.1966), for example, we held that a broker was a third-party beneficiary of a contract between a landlord and a tenant that required the tenant " 'to pay all real estate commissions arising out of the negotiations and execution of the leases,' " even though the broker was not expressly named in the agreement. *Id.* at 654; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 308 (1981) ("It is not essential to the creation of a right in an intended beneficiary that he [or she] be identified when a contract containing the promise is made.").

#### D.

■ Atlantic argues that, even if Johnson had third-party beneficiary status, the exclusivity of the worker's compensation remedy prevents Johnson from suing Atlantic to recover damages Johnson paid to one of Atlantic's employees. While it is true that, under Maryland law,[8] the exclusivity of worker's compensation extinguishes common law indemnification and contribution claims against a corporation whose injured employee would not have been permitted to sue the employer directly, this principle does not apply when there is an "express contractual agreement to assume an obligation to indemnify." *American Radiator & Standard Sanitary Corp. v. Mark Eng'g Co.*, 230 Md. 584, 187 A.2d 864, 865 (1963). Atlantic asserts that because it had no "express contractual agreement" with Johnson providing for indemnification, Johnson's claim must fail. We think this misses the point of the Maryland cases,

which distinguish between a contractual provision where a party expressly agrees to indemnify, and where at most there is the implication of a right of indemnification derived from an employer's contractual promise to perform the job in a quality manner. *See id.* 187 A.2d at 865–67. The critical distinction, therefore, is not between a party to a contract or a third-party beneficiary of the contract, but between an express indemnification clause and an implied obligation of indemnity.

In the present case, Atlantic expressly agreed by contract—albeit in a contract with Sigal, not with Johnson—to indemnify "subcontractors," a class that included Johnson. The indemnification provision of the contract also contains § 18.2, which expressly provides for waiver of worker's compensation exclusivity:

> In any and all claims against the Owner, SIGAL . . . and other contractors or subcontractors . . . by any employees of the Subcontractor . . . the indemnification obligation under this Section 18 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under Worker's or Workmen's Compensation Acts, disability benefit acts or other employee benefit acts.

Johnson, therefore, does not rely on an implied waiver of Atlantic's right not to be sued by its own employees, but merely seeks to recover under a contractual provision where Atlantic expressly waived its immunity from such indemnification claims.

#### E.

■ Finally, Atlantic contends that, because its employee, Marquez, sued Johnson for negligently causing his injury, Johnson should not be permitted, after settling with Marquez, to recover from Atlantic for Johnson's own negligence. This argument also misses the point. First, Johnson contends in its complaint for indemnification that it had not been negligent. Although Atlantic may be able to establish Johnson's negligence at

8. Atlantic is incorporated in Maryland and paid worker's compensation to Marquez under Maryland law.

trial, we cannot conclusively presume at this stage of the proceedings, solely from Johnson's willingness to pay Marquez to settle his claim, that Johnson in fact had been negligent and that Johnson's negligence had caused the injury to Marquez. Accordingly, the rule that a party cannot be indemnified for its own negligence unless the contract unambiguously provides for such indemnification, see *Rivers & Bryan, Inc. v. HBE Corp.,* 628 A.2d 631, 635–36 (D.C.1993), has no application at this point, because Johnson may yet prevail without being indemnified for its own negligence.

Atlantic argues, nonetheless, that reading the indemnification clause to protect Johnson results in an absurdity. According to Atlantic, there is a possibility that it would have to indemnify Johnson despite Johnson's own alleged negligence; recall that the indemnification provision applies even when the event "is caused in part by a party indemnified hereunder." See *supra* note 7. It would follow that Atlantic also will be entitled to indemnification from Johnson as a third-party beneficiary of an identical contract between Johnson and Sigal, since all subcontractors signed the same, individual agreements with Sigal. This would lead to the impossible conclusion, says Atlantic, that both parties must indemnify each other.

We conclude that this possibility does not foreclose Johnson's claim. Again, Johnson contends that it was not in fact negligent, and that in any event Johnson's negligence would not be relevant to determining whether it is entitled to indemnification from Atlantic, since—according to Johnson—the contractual language could not be more clear in requiring indemnification even if Johnson was negligent. See *supra* note 7; *Moses–Ecco Co. v. Roscoe–Ajax Corp.,* 115 U.S.App. D.C. 366, 370, 320 F.2d 685, 689 (1963) (noting that Roscoe–Ajax "did not lose its contract right to indemnification simply because it settled plaintiffs' claim," and that "in the trial of the claim over for indemnification, there was no need for an adjudication of Roscoe–Ajax's liability to plaintiffs because the issue before the trial judge was whether Roscoe–Ajax was reasonable and prudent in settling, not whether it had been negligent

and was therefore legally liable to plaintiffs").

While the ultimate resolution of the competing indemnification claims may be unclear in the event a factfinder were to find that Johnson and Atlantic were jointly negligent and responsible for the injury, this uncertainty cannot preclude Johnson from maintaining its suit in the first place. All we rule is that for purposes of dismissal of the claim, Johnson must be considered an intended beneficiary under the contract entitled to whatever indemnification was intended by the parties to flow to subcontractors under that clause. If both indemnification claims prevail, the trial court will have to determine, on the basis of a full trial record, what the contract language means in such circumstances and what the law is with respect thereto. A few possibilities appear: the indemnification claims might cancel each other out, and Johnson would not recover; or the competing indemnification claims might somehow be reduced to a right of contribution for half of what Johnson paid out, as Johnson suggested in oral argument before this court; or Johnson might recover on the basis of proportionate fault; or the stronger indemnification claim might prevail entirely, on some theory of "passive" versus "active" negligence, as Johnson asserted in its original complaint. We offer no opinion as to which of these alternatives (or others) would state the correct legal outcome. We note only that because Johnson affirmatively denies its negligence, and because it may be entitled to relief even if found negligent, the motion to dismiss was improperly granted.

\*     \*     \*

For the foregoing reasons, the trial court order dismissing Johnson's complaint is reversed as to Atlantic Masonry. We affirm the order insofar as it dismisses the claim against CNA Insurance Co. See *supra* note 1.

*So ordered.*