**Michael CAGLIOTI, Appellant,**

v.

**DISTRICT HOSPITAL PARTNERS, LP et al., Appellees.**

**No. 05–CV–1245.**

District of Columbia Court of Appeals.

Argued Dec. 18, 2006.

Decided Aug. 30, 2007.

---

Erwin Chemerinsky, with whom Patrick M. Regan, Thanos Basdekis, Lisa D. Barnett, Paul J. Cornoni, Anthony Z. Roisman, and Jonathan S. Massey were on the brief, for appellant.

Andrew Butz with whom Barry D. Trebach, Alan S. Block, and Brandon J. Newlands, were on the brief, Washington, D.C., for appellee District Hospital Partners, L.P.

Robert W. Goodson, with whom, Deidre L. Robokos and Kathleen H. Warin were on the brief, Washington, D.C., for appellee Medical Faculty Associates, Inc.

Andrew H. Baida, with whom Steven A. Hamilton was on the brief, Baltimore, MD, for appellee The George Washington University.

Before FISHER, BLACKBURNE–RIGSBY, and THOMPSON, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

This appeal raises an issue of first impression in this jurisdiction. In this case, which arose from a medical negligence and products liability claim, appellant Michael Caglioti claimed injuries resulting from his malfunctioning wheelchair and the subsequent medical treatment he received. As part of his monetary settlement with the wheelchair manufacturer, Graham–Field Health Products, Inc. ("Graham–Field"), Mr. Caglioti was assigned the wheelchair manufacturer's equitable indemnification claim against his medical providers. He sought to pursue the equitable indemnification claim, in lieu of the medical negligence claim, against the medical providers. The medical providers challenge his right to do so. We conclude that an equitable

indemnification claim may be assigned as part of a settlement, that such an assignment may be enforced, and that the trial court erred in dismissing the case with prejudice. We therefore reverse and remand to the trial court for proceedings consistent with this opinion.

There are three issues that we must address in this case: (1) whether Graham–Field obtained a right to pursue an equitable indemnification claim against the medical providers by virtue of the Settlement Agreement; (2) whether Graham–Field could assign the right to pursue an equitable indemnification claim, if in fact it obtained that right; and (3) whether Graham–Field could assign to *appellant* any such equitable indemnification claim as part of the Settlement Agreement, to pursue against the non-settling tortfeasors. We answer each of these questions in the affirmative, and discuss each issue in turn, following a discussion of the relevant factual and procedural background.

## I. Factual and Procedural Background

Appellant, Mr. Caglioti, has been wheelchair bound since childhood. On July 13, 2000, Mr. Caglioti, a partner at the law firm of Arnold & Porter, LLP in Washington, D.C., left his office in his electromechanical wheelchair. That day his wheelchair malfunctioned, throwing him to the ground and causing him to break both of his femur bones as well as suffer other injuries. He was taken by ambulance to George Washington University Hospital ("GWU"), where he claims that his medical providers, Universal Health Services, Inc. ("UHS"), District Hospital Partners, LP

("DHP"), Medical Faculty Associates ("MFA"), and GWU, aggravated his injuries, causing him to sustain significant brain and pulmonary damage.

## A. Federal Litigation and Settlement Agreement

On November 28, 2001, Mr. Caglioti filed a lawsuit in the United States District Court for the District of Columbia against Graham–Field, the manufacturer of Mr. Caglioti's wheelchair, and Everest & Jennings, the distributor of the wheelchair. On November 11, 2003, a confidential Settlement Agreement, General Release and Assignment of Claims ("Settlement Agreement") was entered into between Mr. Caglioti, Graham–Field, and its insurers. The Settlement Agreement provided that in full settlement and discharge of all of Mr. Caglioti's claims against it, Graham–Field promised to pay a lump sum of money, periodic payments, and assign any and all claims that Graham–Field and the other released parties [1] might have for contribution and/or indemnification against the medical providers. The relevant language from the Settlement Agreement regarding the release and assignment of claims stated:

1. *General Release and Discharge/Indemnification*

In consideration [for monies to be paid] the plaintiff hereby *completely releases and forever discharges* [the released parties] as well as any other person, company, organization or entity whatsoever, including but not limited to District Hospital Partners, LP, Universal

---

1. The "released parties" are the parties who entered into the Settlement Agreement with Mr. Caglioti, and included Graham–Field Health Products, Inc., its insurers, agents, servants, employees, attorneys, successors, assigns, predecessors, affiliates, subsidiaries, parents, officers, and directors. Prior to the settlement, Graham–Field filed for Chapter 7 bankruptcy; therefore, the Settlement Agreement was entered into as Graham–Field Chapter 7 debtor by its Chapter 7 trustee.

Health Services, Inc., Medical Faculty Associates and any other physicians, nurses, hospitals, medical facilities or medical personnel that provided care to Plaintiff after his accident, *that may be claimed as responsible in part or in whole* for Plaintiff's injuries or current condition, from any and all past, present or future claims ... which the Plaintiff ever had, now has, *or which may hereafter accrue or otherwise be acquired, on account of, or in anyway growing out of* ... *the Complaint* including without limitation [any damages known or unknown] or for increased damages due to aggravating circumstances as a result of the wheelchair accident.

## 8. *Released Parties' Assignment of Claims to Plaintiff*

As additional consideration for the general release referred to in Paragraph 1 of the Settlement Agreement, the Released Parties are hereby assigning to the Plaintiff any and all claims that the Released Parties may have for contribution and/or indemnification. *This assignment of claims specifically relates to any and all claims that the Released Parties may have against District Hospital Partners, LP, Universal Health Services, Inc., Medical Faculty Associates and/or any other physicians, nurses, hospitals or medical faculties or medical personnel that provided care to Plaintiff after his accident.* It is the intention of the parties in entering into this assignment, that any and all claims that the Released Parties would have against any of the Plaintiff's medical providers, including but not limited to the medical providers referenced in this paragraph, shall be assigned to the Plaintiff. *This assignment includes any claims for contribution, indemnifica-*

*tion, equitable indemnification, or any other similar claims that the Released Parties may have against any health care providers who may have provided negligent medical care and treatment to the Plaintiff and thereby exacerbated his injuries and damages from the July 13, 2000 accident.*

Plaintiff understands and agrees that any claim brought by Plaintiff against District Hospital Partners, LP, Universal Health Services, Inc., Medical Faculty Associates and/ or any other physicians, nurses, hospitals or medical faculties or medial personnel that provided care to the Plaintiff after his accident triggers his indemnification obligation under paragraph 1.

*Plaintiff agrees that twenty-five percent (25 %) of any money he may recover as a result of the assignment referred to in this paragraph 8, after deduction for reasonable attorney's fees and costs, shall be remitted to the Released Parties* ... All parties understand and agree that any money required to be paid under this paragraph shall first reimburse Westchester [Graham–Field's liability insurer] up to the amount it paid in this Settlement, then to Markel [Graham–Field's liability insurer] to reimburse the amount it paid in this Settlement, and lastly, including any amount in excess of the amounts paid by Insurers, to the Company. (emphasis added)

After the Settlement Agreement was executed, Mr. Caglioti dismissed his claims in federal court.

## B. Superior Court Litigation

On September 30, 2003, while his federal case was still pending, appellant filed his complaint in the Superior Court of the District of Columbia. He alleged medical

malpractice against DHP, UHS [2] and MFA for the complications he suffered after his fall that resulted in brain and pulmonary damage. After entering into the Settlement Agreement in the federal case, appellant amended his Superior Court complaint, substituting a claim for equitable indemnification for the medical malpractice cause of action.[3]

On January 15, 2005, appellant filed a second amended complaint in his Superior Court action adding GWU as a defendant. DHP and MFA filed Motions to Dismiss or in the Alternative for Summary Judgment asserting that Mr. Caglioti was precluded from recovering for an equitable indemnity claim because it could not legally be assigned to him. On May 19, 2005, GWU filed its Motion to Dismiss or in the Alternative for Summary Judgment asserting the same arguments as DHP and MFA, and also arguing that any claims Mr. Caglioti had against it were barred by the three-year statute of limitations for negligence actions. On September 6, 2005, the trial court granted the appellees' Motions to Dismiss or in the Alternative for Summary Judgment.

### C. Trial Court's Ruling

The trial judge granted appellees' Motions to Dismiss or in the Alternative for Summary Judgment, holding that as a matter of law, the settling parties (Graham–Field and Everest & Jennings) could not assign their equitable indemnification claim to the appellant. The trial court's order noted that this type of assignment

had not previously been addressed in this jurisdiction.[4] The trial court also concluded that the medical providers were not effectively discharged from liability to Mr. Caglioti because of the "seemingly contradictory terms" of the Settlement Agreement which purported to discharge all of the medical providers' liability, yet made a provision for Mr. Caglioti to assert claims against the medical providers.

The trial court reasoned that the appellant had not been made whole because the lump sum monetary payment from the settlement with the manufacturer did not cover all of appellant's monetary damages. The trial court concluded that Paragraph 8 of the Settlement Agreement, which assigned to Mr. Caglioti Graham–Field's equitable indemnity claim, was an acknowledgment by him that the lump sum payment alone had not made him whole; therefore, he could not have intended to extinguish the medical providers' liability.

In granting the appellees' Motions to Dismiss, the trial court relied heavily on our opinion in *District of Columbia v. Washington Hospital Center*, 722 A.2d 332, 341–43 (D.C.1998) (en banc), concluding that since Mr. Caglioti had not been fully compensated by the settlement with Graham–Field, there was no claim for equitable indemnification against the medical providers. Further, the trial court was concerned that this type of assignment "engenders further litigation, may encourage future plaintiffs to sue defendants one at a time," and could result in double

---

2. Universal Health Services, Inc. was named in the amended complaint in Superior Court. However, it subsequently was dismissed from the lawsuit.

3. In the Settlement Agreement, Graham–Field assigned to Mr. Caglioti its right to contribution and/or indemnification. In his amended complaint, Mr. Caglioti sought to bring a

claim for equitable indemnification, not contribution.

4. The trial judge further noted that in his view, the plain language of D.C.Code § 28–2304 (2001) (General Assignments Including Choses in Action) does not address the type of assignment attempted by Mr. Caglioti.

recovery for the plaintiff. The trial court "fail[ed] to see how permitting plaintiff's claim to proceed promotes the policy goal of encouraging settlements." Appellant filed a timely appeal.

## II. Analysis

■■■ We view the appellees' Motions to Dismiss or in the Alternative for Summary Judgment as motions to dismiss because the Settlement Agreement on which the trial court heavily relied was central to appellant's claim, and was discussed at length in the amended complaint. Where "the documents involved were referenced in the complaint and are central to appellant's claim ... the trial court could consider them in connection with the motion to dismiss without converting the motion to one for summary judgment." *See Oparaugo v. Watts,* 884 A.2d 63, 76 n. 10 (D.C.2005). We review *de novo* a trial court's dismissal of a complaint pursuant to Super. Ct. Civ. R. 12(b)(6). Viewing the Complaint in the light most favorable to the plaintiff, taking the facts alleged in the Complaint as true, we affirm dismissal only where it is clear that the plaintiff cannot prove facts in support of his claim which would entitle him to relief. *Casco Marina Dev., L.L.C. v. D.C. Redev. Land Agency,* 834 A.2d 77, 81 (D.C.2003). When reviewing the trial court's ruling on a Motion to Dismiss pursuant to Super. Ct. Civ. R. 12(b)(6), we consider only the legal sufficiency of the complaint, not whether the plaintiff would have ultimately prevailed. *Leonard v. District of Columbia,* 794 A.2d 618, 629 (D.C.2002).

### A. Graham–Field Obtained the Right to Pursue an Equitable Indemnity Claim Against the Medical Providers

■■■ We have previously recognized a cause of action for equitable indemnity whereby one of the several persons liable for the same harm, or an exacerbation of the harm, discharges their liability, and then seeks to be indemnified by the non-settling parties. *Washington Hosp. Ctr., supra,* 722 A.2d at 332; *see also* RESTATEMENT (THIRD) OF TORTS § 22 (2003). In general, "[i]ndemnity is a common law remedy that arises from an express or implied contract giving the right of complete reimbursement to one party who has been compelled by law to pay what the other party should pay ... [a]n obligation to indemnify exists where the equities of the case and the relationship of the parties support shifting responsibility from one party to another." *Howard Univ. v. Good Food Servs., Inc.,* 608 A.2d 116, 122 (D.C. 1992) (internal citation omitted); *accord Nat'l Health Labs., Inc. v. Ahmadi,* 596 A.2d 555, 557–58 (D.C.1991). Unlike contractual indemnity, equitable indemnity is based upon principles of equity and "implied out of a relationship between the parties to prevent a result which is unjust." *Howard Univ., supra,* 608 A.2d at 123.

■■■ The issue of indemnification arises in the instant case because Graham–Field, the initial wrongdoer, could be "held liable to the injured party [Mr. Caglioti] for the whole loss, including aggravation of the injuries due to subsequent medical negligence." *Wash. Hosp. Ctr., supra,* 722 A.2d at 337. In those circumstances, however, Graham–Field could attempt to recover part of the damages it paid to Mr. Caglioti from the successor tortfeasors [the medical providers]. In somewhat analogous circumstances, in *R & G Orthopedic Appliances & Prosthetics, Inc. v. Curtin,* 596 A.2d 530, 546–48 (D.C.1991), we noted that the medical supplier could be entitled to indemnity from the hospital for the difference between what that plaintiff's damages would have been without the hospital's subsequent malpractice and

the full amount of damages suffered. "Partial indemnity allows the initial tortfeasor to recoup that portion of the damages attributable to the conduct of the second tortfeasor." *Wash. Hosp. Ctr., supra,* 722 A.2d at 340 (internal citation and quotation omitted). Mr. Caglioti is attempting to assert Graham–Field's claim for partial equitable indemnity.

In order for the indemnitee, Graham–Field, to obtain a claim for equitable indemnity, it was required to: (1) obtain releases for DHP, MFA and GWU in the Settlement Agreement; and (2) fully compensate Mr. Caglioti for his injuries, thereby discharging the liability of DHP, MFA, GWU. *See Washington Hosp. Ctr., supra,* 722 A.2d at 341–43.

The medical providers first argue that appellant's equitable indemnity claim fails because he did not meet the first requirement of releasing the medical providers (DHP, MFA, GWU) from liability. Alternatively, appellees argue that even if the Settlement Agreement released the medical providers, then that release discharged the medical providers from all future claims, including the indemnification claim that Mr. Caglioti attempted to assert against the medical providers in the Superior Court litigation. This, appellees argue, would therefore nullify Mr. Caglioti's cause of action against the medical providers. Such a provision in the Settlement Agreement, the medical providers contend, is inherently contradictory since appellant purports to release the medical providers from liability, while simultaneously attempting to assert liability against the medical providers for his injuries by pursuing the equitable indemnity claim.

Whether a settlement agreement released a joint tortfeasor is a question of fact, which we typically answer by looking at the words the parties chose to use in the agreement. *See Wash. Hosp. Ctr., supra,* 722 A.2d at 342 ("Where the language [of the release] is clear and unambiguous its plain language is relied upon in determining the parties' intention."). We also look to the language in the contract to determine whether the plaintiff *intended* to release all wrongdoers or only the particular party named in the release and whether the amount settled for fully compensated the plaintiff. "If the [release] is facially unambiguous, its language should be relied upon as proving the intent; if the document is ambiguous, extrinsic evidence of the parties' subjective intent may be resorted to." *Lamphier v. Wash. Hosp. Ctr.,* 524 A.2d 729, 732 (D.C. 1987).

Mr. Caglioti intended that the Settlement Agreement would release the medical providers. As we reasoned in *Lamphier,* the "parties' intentions are paramount to construction" of the release. *Lamphier, supra,* 524 A.2d at 732. In *Lamphier,* Stephen Lamphier was injured in a car accident and he and his wife accepted a settlement from Ronald Gordon, the other driver involved in the accident. *Id.* at 730. Thereafter, Lamphier sued the Washington Hospital Center alleging that he received negligent treatment for his injuries sustained in the car accident. *Id.* Washington Hospital Center filed for summary judgment, asserting that the general release executed between Lamphier and Gordon (releasing "all other persons, firms, or corporations"), also released Washington Hospital Center from liability for all claims arising out of the car accident. *Id.* at 730.[5] Washington Hospital

---

5. The language in that agreement was as follows:

> We, Stephen Paul Lamphier and Carolyn Lamphier ... in consideration for the sum of $27,500 ... hereby remise, release and

Center also argued that the medical malpractice claim was barred because Lamphier fully recovered for his injuries from Gordon. *Id.* The court concluded, considering the circumstances of the settlement agreement, that it was possible that only successors in interest were to be released, and as such, a contested issue of fact regarding the meaning and effect of the release existed. *Id.* at 733.

Here, by contrast, the unambiguous language of the Settlement Agreement supports Mr. Caglioti's assertion that the appellees were released.

The plain language of the Settlement Agreement also distinguishes this case from *District of Columbia v. Washington Hospital Center*, and demonstrates that appellant intended to release Graham–Field, as well as MFA and DHP.[6] In that case, the District of Columbia entered into a settlement agreement with a pedestrian who was struck by a car and was thereby released from liability for all claims arising out of the accident. *Washington Hosp. Ctr., supra*, 722 A.2d at 335. However, the agreement failed to discharge Washington Hospital Center from liability to the pedestrian and, therefore, the District could not recover from Washington Hospital Center for equitable indemnity. *Id.* at 342. The consent judgment stated that "this case . . . is dismissed with prejudice as to all parties and claims." *Id.* Washington Hospital Center was not a party to the litigation, and while the consent judgment expressly released the "District of Columbia

and its officers, agents and employees . . .," no other entities or individuals, including Washington Hospital Center, were mentioned in the consent judgment. *Id.* We reasoned that the contractual language was facially unambiguous and did not provide for Washington Hospital Center's release from liability. In contrast, the language in the Settlement Agreement in this case makes it clear that Mr. Caglioti intended a comprehensive release from any claim he *directly* had against the released parties.

With respect to the second requirement for establishing an equitable indemnity claim, the medical providers contend that Mr. Caglioti was not made whole because the lump sum monetary payment from the settlement with the manufacturer did not cover all of his monetary damages. The medical providers argue that Paragraph 8 of the Settlement Agreement (providing that any claims for contribution, indemnification, equitable indemnification or other similar claims that the Released Parties have shall be assigned to Mr. Caglioti) was an acknowledgment by appellant and Graham–Field that the lump sum payment had not made Mr. Caglioti whole.

 In determining whether Mr. Caglioti was made whole by the Settlement Agreement, the essential issue with regard to compensation is "did the amount settled for fully compensate the plaintiff, or was it taken merely as the best obtainable compromise for the settler's liability." *Lam-*

---

forever discharge Ronald Lester Gordon and Government Employees Insurance Company, releasee(s) successors and assigns, and/or his, her or their associates, heirs, executors and administrators, and *all other persons, firms or corporations* of and from any and every claim, demand, right or cause of action of whatever kind or nature, on account of or in any way growing out of any and all personal injuries and consequences thereof including but not limited to

. . . all liability arising out of said accident including, but not limited to, all liability for contribution and/or indemnity.
*Lamphier, supra*, 524 A.2d at 730 (caps removed).

**6.** We conclude, *infra*, that whether GWU was released by the terms of the Settlement Agreement is a factual issue for the trial court to resolve.

*phier, supra,* 524 A.2d at 735. Here, the plain language of the Settlement Agreement makes clear that the parties intended that the terms of the Settlement Agreement fully compensate Mr. Caglioti for his injuries: "the parties identified above desire to enter into this settlement and discharge of all claims which are or might have been subject of the Complaint." The language of the Settlement Agreement in this case is key because Mr. Caglioti accepted the settlement as full compensation. *McKenna v. Austin,* 77 U.S.App.D.C. 228, 233, 134 F.2d 659, 664 (1943) ("when one makes full reparation for all loss, the others are discharged from liability to the injured person"). In *Washington Hospital Center,* the settlement document explicitly stated that it was a "negotiated compromise which was fair and reasonable," and we therefore concluded that because the settlement was taken in compromise rather than full compensation, and did not release Washington Hospital Center from liability, no claim for equitable indemnification could lie. *Washington Hosp. Ctr., supra,* 722 A.2d at 342. Here, by contrast, Graham–Field's promise to pay money to Mr. Caglioti *plus* the promise to assign its "right" to pursue a claim for equitable indemnification (with the possibility of recouping additional money) together constituted full satisfaction of Mr. Caglioti's claims.[7] Even if the monies received in the settlement did not cover what Mr. Caglioti claimed to be his damages in the complaint, he accepted the lump sum monetary payment, the additional periodic payments, and the assignment of the equitable indemnification claim, intending for the entire package to serve as full compensation for his injuries. *See Lamphier, supra,* 524 A.2d at 735 n. 12 (*"Where there has been such a full satisfaction, or where it is agreed that the amount paid under the release is so received,* no claim should remain as to any other tortfeasor.") (emphasis in original).

We are satisfied that Graham–Field obtained an equitable indemnification claim because the Settlement Agreement (1) released the joint tortfeasors and (2) fully compensated Mr. Caglioti for his injuries. Now we address appellees' further contention that even if an equitable indemnification claim arose, and could have been assigned to Mr. Caglioti, the Settlement Agreement nullified it because appellant purported to release all claims "which the Plaintiff ever had, ... *or which may hereafter accrue or otherwise be acquired"* for his injuries and failed to expressly reserve for Mr. Caglioti the right to pursue an assigned indemnification claim. (emphasis added). We are unpersuaded by this contention.

■ Here, the plain language of the Settlement Agreement makes clear that Mr. Caglioti intended to release the medical providers from direct claims he had against the medical providers. Moreover, the plain language makes clear that the parties did not intend to release any claims for contribution or indemnification.[8]

---

7. Grahman–Field's promise to pay money and promise to assign the possibility of recouping additional money through the pursuit of the equitable indemnification claim, and Mr. Caglioti's acceptance of such promises in exchange for his release of Graham–Field, were sufficient consideration for the contract. *See, e.g., Kidwell & Kidwell, Inc. v. W.T. Galliher & Bro.,* 282 A.2d 575, 578 (D.C.1971) ("Neither money *n* or benefit moving to a promisor is essential to a contract"); *Bullard v. Curry-*

*Cloonan,* 367 A.2d 127, 131 (D.C.1976) ("[A]s a general principle, the forbearance of a cause of action advanced in good faith, which is neither absurd in fact nor obviously unfounded in law, constitutes good and valuable consideration.").

8. *Cf. Whetstone v. Sooter,* 325 Ill.App.3d 225, 259 Ill.Dec. 102, 757 N.E.2d 965, 970–71(2001); *Robarts v. Diaco,* 581 So.2d 911, 916 (Fla.Dist.Ct.App.1991). In both cases the

Paragraph 8 of the Settlement Agreement provides for the assignment of claims to appellant and Paragraph 1 (the release paragraph) contemplates the subsequent assignment in Paragraph 8.[9] Additionally, further evidencing the intent of the parties, the agreement is titled "Settlement Agreement, General Release & Assignment of Claims." *See Robarts, supra* note 8, 581 So.2d at 916 (noting that the plain language and format of the agreement supported the court's interpretation).

■ Our reading of the contract as a whole leads us to reject the argument that Mr. Caglioti's failure to expressly reserve a right to pursue a claim for equitable indemnification when executing the release, extinguished that right.[10] We are required to interpret the Settlement Agreement as a whole, giving reasonable effect to all of its parts.[11] Specifically, we must construe Paragraphs 1 and 8 together, in a manner that does not render the language of either paragraph null and void. Appellees' interpretation, which we reject, would render a significant portion of the Settlement Agreement, namely the assignment clause, meaningless. *See A.S. Johnson Co. v. Atlantic Masonry Co.*, 693 A.2d 1117, 1122–23 (D.C.1997) (rejecting the interpretation that would render part of an agreement meaningless); *Retail Clerks Int'l Ass'n v. NLRB*, 166 U.S.App.D.C. 422, 426 n. 15, 510 F.2d 802, 806 n. 15 (1975) ("It is a settled rule of contract interpretation that contract language should not be interpreted to render the contract promise illusory or meaningless.").

### B. Graham–Field's Equitable Indemnity Claim Was Assignable

We have noted on several occasions that, as a general rule, claims are freely assignable. *Brandenburger & Davis, Inc. v. Estate of Lewis*, 771 A.2d 984, 988 (D.C.2001). In *Brandenburger*, we recognized the assignment by heirs of a portion of their estate rights and concluded that *Brandenburger & Davis, Inc.* had standing as the assignee to assert claims in the Probate Division in Superior Court. *Brandenburger, supra*, 771 A.2d at 985. We took the opportunity in that case to reinforce the prevailing view in this jurisdiction that a plaintiff can bring a claim that has been assigned to him. *Id.* at 988. This court's preference for free assignability of claims is such that we have held that, "unless a contract contains clear, unambiguous language prohibiting an assignment," at-

---

contribution claims were not released even though—like the release at issue here—the release in question purported to release all future claims.

9. *See* Assignment provision (Paragraph 8 of the Settlement Agreement) quoted *supra* pages 5–6.

10. The cases appellees cite for this proposition are inapposite and distinguishable from this case. In *GLM Partnership*, for example, the release on its face released all claims, and the insurance policy as a whole did not support a different interpretation. *Cf., GLM P'ship v. Hartford Cas. Ins.*, 753 A.2d 995, 998–99 (D.C.2000) ("[T]he fact that the release contract here failed to specifically re-serve GLM's right to file claims against Hartford beyond the contract supports an interpretation that the release of 'all claims' meant just that.").

11. *See, e.g., 1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc.*, 485 A.2d 199, 205 (D.C. 1984) (internal citations and quotations omitted.)

> The meaning must be ascertained in light of all the circumstances surrounding the parties at the time the contract was made. The writing must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms. If the document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent.

tempts to restrict the free assignablity of a claim will not be honored. *Id.* at 988 (internal citation omitted).

As our previous decisions have explained, "the right to assign is presumed, based upon principles of unhampered transferability of property rights and of business convenience." *Antal's Rest., Inc. v. Lumbermen's Mut. Cas. Co.,* 680 A.2d 1386, 1388 (D.C.1996) (upholding an assignment whereby owner of property where the restaurant was located assigned to the restaurant owners its claim against insurer for remaining fire loss); *see also Flack v. Laster,* 417 A.2d 393, 399 (D.C. 1980) (recognizing a prospective purchaser's assignment of his interest in a contract to purchase real property); *Nat'l Union Fire Ins. Co. v. Riggs Nat'l Bank,* 646 A.2d 966, 972 (D.C.1994) (company assigned to insurer rights it had against the bank for failing to recredit its account after the bank cashed fraudulent checks).

 In relevant part, D.C.Code § 28–2304 provides that "[i]n a general assignment … it is not necessary to execute a separate assignment of each chose in action, but the assignee, by virtue of the general assignment, may sue in his own name on the several choses in action included therein." In the instant case, the trial court concluded that D.C.Code § 28–2304 does not address whether an equitable indemnification claim is assignable. We agree that the statute does not by its terms expressly authorize the assignment of equitable indemnity claims. However, we find nothing in the language of this statute that *expressly prohibits* the assignment of an equitable indemnity claim. Moreover, we have said that the language of D.C.Code § 28–2304 "embodies this [jurisdiction's] policy of free assignability of claims." *Antal's Rest. Inc., supra,* 680 A.2d at 1389.

## C. Graham–Field Could Assign its Equitable Indemnity Claim to Mr. Caglioti as Part of the Settlement Agreement

 We have established above that Graham–Field obtained a claim for equitable indemnity and that such a claim was freely assignable. We turn now to the central issue in this case: whether the equitable indemnity cause of action could be assigned to Mr. Caglioti pursuant to the Settlement Agreement. We conclude that a claim for equitable indemnification can be assigned by the settling defendant to the plaintiff as part of the Settlement Agreement.

Mr. Caglioti argues that the assignment of the equitable indemnification claim to him by Graham–Field is wholly consistent with prior decisions of this court favoring a policy of free assignability of claims. *See, e.g., Brandenburger, supra,* 771 A.2d at 988. We agree that such an assignment is consistent with District of Columbia law. The assignment of an equitable indemnification claim to a plaintiff as part of a settlement agreement can serve to limit the appellees' total exposure, because (as is true of Mr. Caglioti here) the plaintiff cannot recover more than the settlement amount. Additionally, this type of assignment releases appellees from being subject to direct negligence claims without depriving them of a full and fair opportunity to contest the settlement agreement and to contest their share of the responsibility for appellant's injuries. We note that several jurisdictions allow such an assignment. *See, e.g., Kimball Int'l, Inc. v. Northfield Metal Prods.,* 334 N.J.Super. 596, 760 A.2d 794 (2000); *Bush v. Superior Court of Sacramento,* 10 Cal.App.4th 1374, 13 Cal. Rptr.2d 382 (Cal.App. 3 Dist.1992); *Robarts, supra* note 8, 581 So.2d at 915.

For example, in *Robarts,* the court construed the Uniform Contribution Among

Tortfeasors Act adopted in Florida and upheld the assignment of a claim for contribution to a plaintiff. *Robarts, supra,* note 8, 581 So.2d at 915. The decision is instructive because the mechanics of the contribution claim pursuant to the Florida statute are analogous to an indemnification claim at common law in the District of Columbia.[12]

Appellant also cites *Bush* in support of the assignment. In *Bush,* homeowners sued their insurance carrier alleging that it failed to pay benefits under their insurance policy after their home burned down. *Bush, supra,* 10 Cal.App.4th at 1379, 13 Cal.Rptr.2d 382. In a separate action, the homeowners sued Drs. Wright and Bush for medical malpractice and American Therapeutics for products liability. *Id.* They alleged that their permanent injuries were caused by the side effects of a drug prescribed to treat emotional distress suffered by one of the homeowners, who received therapy for emotional distress which, resulted from the home being burned down and not receiving an insurance settlement for the damage. *Id.* The homeowners settled their claims with the insurance company for a sum of money and an assignment of the insurance companies' claims against the doctors and American Therapeutics. *Id.* The court held that an indemnification claim was assignable to the homeowners. The California court noted that the homeowners properly stood in the shoes of the insurer and could therefore assert the homeowners' claim that was assigned to them. The court further noted the public policy favoring settlements, and cautioned against allowing petitioners in the case to profit from their wrong by escaping payment for the harm. *Id.* at 1382–85, 13 Cal.Rptr.2d 382. We note that California, like the District of Columbia, has a statute which provides that a chose in action is presumptively assignable.[13]

Another notable case upholding this type of assignment is *Kimball International, Inc.,* which involved a worker who was injured while sitting in a defective chair and subsequently settled with the chair manufacturer. The settlement included a partial assignment of the manufacturer's indemnity claim against the supplier of the chair's malfunctioning component part. *Kimball Int'l, Inc., supra,* 760 A.2d at 794. The New Jersey Superior Court held that based on New Jersey's expansive view of the assignability of claims for money damages, the indemnification claim was assignable to the injured person. *Id.* at 803. Although New Jersey recognizes a prohibition against the assignment of tort claims, the court in *Kimball* noted that the assignment of an equitable indemnification claim was not analogous to assigning a tort. *Id.* The prohibition on assigning torts was to protect the injured person from unscrupulous individuals, and the court concluded that those circumstances were not present in an assignment of an indemnification ac-

---

**12.** *Robarts, supra* note 8, 581 So.2d at 914 (quoting FLA. STAT. ANN. § 768.31(2)(a)(d) (West 2007)) "Except as otherwise provided in this act, when two or more persons become jointly or severally liable in tort for the same injury to person or property, or for the same wrongful death, there is a right to contribution among them even though judgment has not been recovered against all or any of them ... [a] tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury or wrongful death is not extinguished by the settlement or in respect to any amount paid in settlement which is in excess of what was reasonable."

**13.** CAL. CIV.CODE § 954 (West 2007) ("A thing in action, arising out of a violation of a right of property, or out of an obligation, may be transferred by the owner.").

tion. Because "the injured person is the very one for whose protection the rule against the assignment of tort claims was designed, it would be anomalous to invoke the rule to bar the assignment of an indemnification claim to that person." *Id.* That court further noted that, "the assignment to the injured party of an alleged tortfeasor's claim against another alleged tortfeasor may serve the interests of both the injured party and efficient judicial administration by providing an additional means of settling the underlying personal injury case." *Kimball Int'l, supra,* 760 A.2d at 803 (internal citation omitted).

Although *Kimball* deals with indemnity that arises pursuant to a contract, not the type of equitable indemnity contemplated in the instant case, the distinction is of little significance as New Jersey also recognizes equitable indemnity, and New Jersey has a similar statute which provides that choses in action that arise pursuant to contract are freely assignable. N.J. STAT. ANN. § 2A 5–1 (West 2002) ("[A]ll choses in action arising on contract are assignable."). The underlying rationale in jurisdictions which have upheld the assignment of claims to the plaintiff, is the free assignablity of claims.[14]

Having expressed a strong preference for the free assignability of claims, we are not persuaded by the appellees' arguments to the contrary in reliance on a Wisconsin case, *Hartley v. St. Francis Hospital,* 24 Wis.2d 396, 129 N.W.2d 235 (1964). In that case, the plaintiff, Mr. Hartley, was injured by a truck, and his injuries were aggravated by the hospital. Plaintiff settled with the truck owner's insurance company, and as part of the settlement, plaintiff released the insurer and was assigned

any claim for damages the insurer may have had against the hospital. Hartley gave a general release and did not reserve the right to sue the defendant (the hospital) for their malpractice in treating him. However, the court did not recognize this assignment, concluding that, "[i]t would be fundamentally inconsistent for the plaintiff to be allowed to acquire by assignment a right to recover damages for the malpractice in addition to the $25,000.00 at which he fixed the value of his entire cause of action. This right is recognized in the insurance company only for the purpose of allowing it to recoup a part of the sum which it paid in settlement of the plaintiff's cause of action." *Hartley, supra,* 24 Wis.2d at 401, 129 N.W.2d at 237. However, *Hartley* was overruled, in part, because it relied on a common law rule no longer applicable in Wisconsin, namely the rule that a release discharges the liability of concurrent tortfeasors. *See Krenz v. Med. Protective Co.,* 57 Wis.2d 387, 204 N.W.2d 663 (1973) (overruling the common law rule applied in *Hartley* that a release discharged the liability of concurrent tortfeasors); *cf. Kovalesky v. Giant Rug Market,* 422 Pa.Super. 116, 618 A.2d 1044 (1993) (where the court held that the injured person could not recover pursuant to the right of contribution assigned to him because the settlement agreement [unlike Mr. Caglioti's Settlement Agreement], did not extinguish the liability of the tortfeasor from whom contribution was sought and the settling parties actually conspired to subject the non-settling tortfeasor to greater liability than paid in the settlement.).

 We also reject appellees' contention that we should invalidate the assign-

---

**14.** *But cf. Jackson v. Freightliner Co.,* 938 F.2d 40 (5th Cir.1991). In *Jackson* the court did not recognize an assignment to a plaintiff of a right to contribution and indemnity by a settling defendant. However, pursuant to Texas common law, unlike in the District of Columbia, a settling defendant does not have any rights against a non-settling defendant.

ment in this case because it may result in a windfall to Mr. Caglioti or promote additional litigation. Of course, Mr. Caglioti hopes to increase his total recovery by pursuing the equitable indemnification claim against the medical providers. If he is successful, he will be able to add the sums recovered from the medical providers (less 25%) to the amounts already received from or promised by Graham–Field and the other released parties. However, the assignment may actually limit the potential for a windfall because appellant agrees that he cannot recover more from the medical providers than the settlement amount specified in the Settlement Agreement. In any event, other courts have upheld similar assignments despite the possibility of additional recovery. In *Rubenstein v. Royal Ins. Co. of Am.*, 45 Mass. App.Ct. 244, 696 N.E.2d 973, 975–76 (1998), the Massachusetts court rejected the notion that the assignment should be void because of a possible windfall, noting that other jurisdictions have upheld an assignment of rights even if it may provide additional recovery for the same loss. (citing *Bush, supra*, 10 Cal.App.4th at 1374, 13 Cal.Rptr.2d 382 [15] and *Robarts, supra* note 8, 581 So.2d at 915). Indeed, there are other instances where for policy reasons a plaintiff is allowed a "windfall" or double recovery. As a general proposition, the collateral source rule provides "that when a tort plaintiff's items of damage are reimbursed by a third-party who is independent of the wrongdoer, the plaintiff may still seek full compensation from the tortfeasor *even though the effect may be a double recovery.*" *Jacobs v. H.L. Rust Co.*, 353 A.2d 6, 7 (D.C.1976) (emphasis added).

If appellant is not allowed to pursue his claim, it is the medical providers who could potentially be the recipients of any windfall as they could evade liability and not have to pay any amount, even if they were negligent as alleged. *Block v. Pepper Constr. Co.*, 304 Ill.App.3d 809, 237 Ill.Dec. 662, 710 N.E.2d 85, 89 (1999) ("prohibiting the assignment of a right of contribution, in effect, contravenes the equitable sharing of damages because if the right of contribution is eliminated completely, the [appellees] would receive the windfall because the [appellees] would not contribute at all"). The first amended complaint alleges Graham–Field's negligence only caused relatively minor orthopedic injuries, whereas appellant alleges that the medical providers caused major injuries including neurological and pulmonary injuries. There is no dispute that Mr. Caglioti's injuries were massive with extensive medical expenses and lost income. Additionally, Mr. Caglioti, forty-two years old at the time of the injury, no longer has the intellectual or physical ability to continue practicing law.

Jurisdictions which have allowed an assignment such as the one contemplated here, have focused on the promotion of settlements as a key public policy consideration in permitting the assignment. In the District of Columbia, the settlement of a dispute is an important policy consideration. *See, e.g., Makins v. District of Columbia*, 861 A.2d 590, 597 (D.C.2004) ("settlement of disputes, both in trial courts and on appeal, is to be encouraged as sound public policy."); *Gabrielian v. Gabrielian*, 473 A.2d 847, 850 (D.C.1984) ("[p]ublic policy encourages drafting of settlement agreements; if valid, they are binding on the parties."); *Bullard, supra*, note 7, 367 A.2d at 131 ("[u]nless a claim is

---

**15.** In *Bush* the court reasoned that policies against excess recovery had to be balanced

against other relevant public policies.

unreasonable or the compromise imprudently consummated, the public policy of encouraging settlements should be recognized.").[16] Although in this instance the assignment of the equitable indemnity claim perhaps has prolonged the litigation, in other instances the assignment could provide an additional means of settling the underlying case.[17] *See Rubenstein, supra,* 696 N.E.2d at 975. Additionally, the assignment "fosters settlement with the tortfeasor most willing to settle." *Bush, supra,* 10 Cal.App.4th at 1386, 13 Cal.Rptr.2d 382.

We are also not persuaded that the medical providers are exposed to a greater burden because of this assignment. Any litigation against the medical defendants is the same litigation that the wheelchair manufacturer could or would have pursued if it had not assigned its claim for equitable indemnification to appellant. *See Bush, supra,* 10 Cal.App.4th at 1383, 13 Cal.Rptr.2d 382 ("petitioners are not exposed to any greater liability or burden than would be the case without the assignment."). Mr. Caglioti cannot recover damages unless he can prove that Graham–Field was entitled to indemnification; thus, payment is not inevitable. *Cf. M. Pierre Equip. Co. v. Griffith Consumers Co.,* 831 A.2d 1036, 1039 (D.C.2003) (A settling tortfeasor "has the burden of establishing the liability of the non-settling tortfeasor and the reasonableness of its settlement with the injured person[s]."). In *M. Pierre,* a case involving the assignment of a tort claim, we held that the trial judge's comprehensive instructions to the jury regarding the manner in which to assess the reasonableness of the claimed damages, specifically by covering general categories of damages and providing detailed guidance regarding how to assess the damages, were appropriate and necessary to avoid prejudice. *Id.*

If Graham–Field pursued the equitable indemnity claim, it would have to demonstrate that the medical providers are liable for injuries to Mr. Caglioti. As in a medical malpractice case, Graham–Field would have the burden of proving the applicable standard of care, a deviation from that standard and a causal relationship between the deviation and the injury. *See Travers v. District of Columbia,* 672 A.2d 566, 568 (D.C.1996). Mr. Caglioti, in pursuing the assignment of the equitable indemnification claim, must meet this same standard, which certainly does not guarantee his recovery, particularly since the medical providers could assert the defense that the money paid in the settlement between Graham–Field and Mr. Caglioti was unreasonable and far beyond any damages suffered by Mr. Caglioti.

Finally, appellees assert that it would be unfair to allow Mr. Caglioti to pursue the

---

**16.** *Cf. Dosdourian v. Carsten,* 624 So.2d 241 (Fla.1993) (prohibiting Mary Carter Agreements). In a Mary Carter Agreement there are multiple tortfeasors and one of the defendants either guarantees a minimum recovery to the plaintiff or gives the plaintiff a loan which is repaid only if the plaintiff recovers against the other defendants. Thereafter, the settling defendant will often remain in the suit, and may have a right to veto plaintiff's settlement agreements with the other defendants. Some courts have prohibited Mary Carter Agreements, concluding that they discourage settlement as well as result in an unfair allocation of liability and damages among tortfeasors. The assignment contemplated here is wholly unlike a Mary Carter Agreement.

**17.** It is not clear from the briefs or the oral arguments why the Settlement Agreement was structured this way. Graham–Field filed for Chapter 7 bankruptcy, therefore the settlement could have been structured this way because of bankruptcy considerations. However, parties are free to contract and enter into settlement agreements as they determine, and reasonable contracts are to be upheld. *Vicki Bagley Realty, Inc. v. Laufer,* 482 A.2d 359, 368 (D.C.1984).

claim, because he will be a much more sympathetic plaintiff than Graham–Field. We are not persuaded by this argument. A trial judge has ample authority to manage the litigation so that the jury understands that Mr. Caglioti is pursuing a claim for equitable indemnification in the place of Graham–Field.

### III. Conclusion

Although we confront this issue for the first time in this jurisdiction, Graham–Field's assignment of its equitable indemnification claim against the medical providers to Mr. Caglioti is supported by and not in conflict with the law in this jurisdiction favoring the assignability of claims and is not counter to any public policy. For the foregoing reasons, we reverse and remand to the trial court for proceedings consistent with this opinion.[18]

*So ordered.*

---

**18.** We do not address two additional issues raised by GWU—the factual issue of whether GWU was covered by the language of the release or the legal issue of whether the claims against GWU are barred by the statute of limitations. Since the trial court did not address these issues below, we decline to do so here in the first instance.